UNITED STATES, Appellee

v.

Vangle S. HARDISON, Seaman
U.S. Navy, Appellant

No. 06-0064

Crim. App. No. 200200753

United States Court of Appeals for the Armed Forces

Argued October 16, 2006

Decided January 25, 2007

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, J., joined.

STUCKY and RYAN, JJ., did not participate.

<u>Counsel</u>

For Appellant: <u>Captain Rolando R. Sanchez</u>, USMC (argued).

For Appellee: <u>Lieutenant Justin E. Dunlap</u>, JAGC, USN (argued);
<u>Commander Charles N. Purnell II</u>, JAGC, USN, and <u>Major Wilbur
Lee</u>, USMC (on brief).

Military Judge:  J. V. Garaffa

<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Judge BAKER delivered the opinion of the Court.

Appellant was a seaman assigned to the Funeral and Honor Guard detail, Naval Submarine Base, Kings Bay, Georgia. Before a special court-martial composed of officer members Appellant pleaded not guilty to a single specification of using marijuana in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). Appellant was convicted and sentenced to a bad-conduct discharge. The convening authority approved the sentence and the United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Hardison, No. 200200753, 2005 CCA LEXIS 258, at *6, 2005 WL 2105409, at *3 (N-M. Ct. Crim. App. Aug. 29, 2005) (unpublished). Upon Appellant's petition we granted review of the following issue:

> WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED BY CONCLUDING THAT THE MILITARY JUDGE HAD NOT COMMITTED PLAIN ERROR BY ADMITTING EVIDENCE OF APPELLANT'S PRESERVICE DRUG USE AND A SERVICE WAIVER FOR THAT DRUG USE.

We hold that the Navy-Marine Corps Court of Criminal Appeals erred in concluding that the military judge had not committed plain error in admitting the evidence. Admissible evidence in aggravation must be "directly related" to the convicted crime. There was no such nexus here and the resulting admission prejudiced Appellant's substantial rights.

BACKGROUND

Appellant joined the Navy pursuant to a drug waiver, permitting her to enlist despite admission of preservice drug use. Specifically, at the time of enlistment, she admitted to having used marijuana in the six months prior to entering the Navy. On April 30, 2001, approximately three years into her service commitment, Appellant was administered a random urinalysis test. The test revealed evidence of recent marijuana use.

Appellant was court-martialed before members and convicted. At sentencing the Government's brief sentencing argument focused on the various enlistment documents in which Appellant had both admitted to past drug use and had pledged not to use drugs in the Navy.[1] Trial counsel's specific argument to the members was that in assessing her sentence they should consider the fact

---

[1] The three enlistment documents were:

DD Form 1966/2: In response to Question 26 which inquired if Appellant had "ever tried or used or possessed . . . cannabis ([including marijuana])," Appellant answered in the affirmative.

DD Form 1966 Annex: In answering Question 8 in Section Three of the form in the affirmative, Appellant admitted to having "experimentally/casually used marijuana within the past six months."

Enlistment Statement of Understanding: Appellant confirmed that she understood that "DRUG USAGE IN THE NAVY IS PROHIBITED AND WILL NOT BE TOLERATED!"

that Appellant "knew better.  She came in on a drug waiver.  She knew the Navy's drug policy and she violated it anyway."

Defense counsel did not object to this argument.  The military judge did not address trial counsel's argument and did not give a curative or limiting instruction to the jury in response to the Government's statements.  The military judge instructed members to "consider all matters . . . offered in aggravation" including the enlistment documents concerning Appellant's preservice drug use.  (Emphasis added).

Before the Navy-Marine Corps Court of Criminal Appeals Appellant argued that the military judge committed plain error in admitting her preservice drug use during sentencing. Hardison, 2005 CCA LEXIS 258, at *1, 2005 WL 2105409, at *1. The lower court noted that Appellant had not raised her prior use of marijuana in mitigation or extenuation.  2005 CCA LEXIS 258, at *3, 2005 WL 2105409, at *1.  However, the court concluded that "[g]iven the confusion in our case law, we cannot hold that the military judge committed clear and obvious error in admitting" the exhibits in question.  2005 CCA LEXIS 258, at *4, 2005 WL 2105409, at *2.  In particular, the lower court noted that in United States v. Martin, 5 M.J. 888, 889 (N.C.M.R. 1978), the court stated, "'Once a member qualifies for entry, his past misdeeds should not be held against him and he should be able to start off with a clean slate.'"  2005 CCA LEXIS 258,

4

at *4, 2005 WL 2105409, at *2.  However, the lower court also noted that in United States v. Honeycutt, 6 M.J. 751, 753 (N.C.M.R. 1978), "[t]he majority held that evidence of preservice drug use was admissible as it 'better define[d] the enormity of the crimes for which Appellant was sentenced."  2005 CCA LEXIS 258, at *5; 2005 WL 2105409, at *2.

Before this Court, Appellant again argues that her sentencing was prejudiced by the admission of her preservice drug use.  Appellant asserts that precedent has clearly held that there must be a "direct relation" between the use of which she was convicted and the uncharged preservice drug use. Appellant further contends that there was no such link here, and that admission of the records was to her prejudice.

The Government argues that Appellant's preservice drug use demonstrated that "Appellant's wrongful use of marijuana was not an isolated occurrence.  The evidence of Appellant's pre-service drug use was, therefore, directly related to the offense for which she was convicted . . . ."

DISCUSSION

In the absence of a defense objection we review a claim of erroneous admission of evidence for plain error under the test set forth in United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998); United States v. Hays, 62 M.J. 158, 166 (C.A.A.F. 2005).  Plain error is established when:  (1) an error

5

was committed; (2) the error was plain, or clear, or obvious;
and (3) the error resulted in material prejudice to substantial
rights. Powell, 49 M.J. at 463-65. Appellant has the burden of
persuading the court that the three prongs of the plain error
test are satisfied. United States v. Scalo, 60 M.J. 435, 436
(C.A.A.F. 2005).

In this case, Appellant's admitted preservice drug use was
offered in aggravation. Rule for Courts-Martial (R.C.M.)
1001(b)(4) sets forth the general contours of permissible
evidence of aggravation at sentencing:

> (4) Evidence in aggravation.
> The trial counsel may present evidence as to any
> aggravating circumstances directly relating to or
> resulting from the offenses of which the accused has
> been found guilty. Evidence in aggravation includes,
> but is not limited to, evidence of financial, social,
> psychological, and medical impact on or cost to any
> person or entity who was the victim of an offense
> committed by the accused and evidence of significant
> adverse impact on the mission, discipline, or
> efficiency of the command directly and immediately
> resulting from the accused's offense.

There are two primary limitations on the admission of
aggravation evidence. First, such evidence must be "directly
relating" to the offenses of which the accused has been found
guilty. This rule does "'not authorize introduction in general
of evidence of . . . uncharged misconduct,'" United States v.
Nourse, 55 M.J. 229, 231 (C.A.A.F. 2001), and is a "'higher

6

standard' than 'mere relevance.'" United States v. Rust, 41 M.J. 472, 478 (C.A.A.F. 1995).

The second limitation is that any evidence that qualifies under R.C.M. 1001(b)(4) must also pass the test of Military Rule of Evidence (M.R.E.) 403, which requires balancing between the probative value of any evidence against its likely prejudicial impact. See United States v. Wilson, 35 M.J. 473, 476 n.5 (C.M.A. 1992).

I. "Directly Related" Evidence

The meaning of "directly related" under R.C.M. 1001(b)(4) is a function of both what evidence can be considered and how strong a connection that evidence must have to the offenses of which the accused has been convicted.

Regarding the strength of the connection required between admitted aggravation evidence and the charged offense, this Court has consistently held that the link between the R.C.M. 1001(b)(4) evidence of uncharged misconduct and the crime for which the accused has been convicted must be direct as the rule states, and closely related in time, type, and/or often outcome, to the convicted crime.

For instance, in United States v. Wingart, 27 M.J. 128, 135 (C.M.A. 1988), the Court held that uncharged misconduct could be admitted in aggravation at sentencing if it was directly preparatory to the crime for which Appellant was convicted. In

Nourse, this Court concluded that testimony about uncharged robberies was properly admitted in aggravation when it illustrated that the uncharged misconduct was part of the same course of conduct which the accused had committed against the same victim, in the same place, several times prior to the charged offense. 55 M.J. at 232. See also United States v. Metz, 34 M.J. 349, 351-52 (C.M.A. 1992) (holding that uncharged conduct was admissible because it was "interwoven" in the res gestae of the crime and provided information to determine the identity of the murderer and his intent when committing the crime); United States v. Ross, 34 M.J. 183, 187 (C.M.A. 1992) (concluding that it was permissible to show that the appellant altered twenty to thirty enlistment aptitude tests, even though he pleaded guilty only to altering four as it showed a wider course of conduct); United States v. Mullens, 29 M.J. 398, 400 (C.M.A. 1990) (stating that uncharged misconduct consisted of "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs"); United States v. Silva, 21 M.J. 336, 337 (C.M.A. 1986) (holding that uncharged misconduct was admissible because it was an "integral part of [the appellant's] criminal course of conduct").

In regard to the strength of the connection needed, it is important to note that judicial discretion to admit uncharged misconduct under R.C.M. 1001(b)(4) was limited when the

President promulgated the 1984 edition of the Manual for Courts-Martial, United States (1984 MCM), replacing the 1969 edition. The 1984 MCM replaced the original rule for the admission of evidence at sentencing, which allowed "any aggravating circumstances" with the requirement that the evidence in aggravation be "directly related." See Manual for Courts-Martial, United States (1969 rev. ed.); see also Wingart 27 M.J. at 136.

In this case, the Government argues that Appellant's use of drugs after enlistment was "[d]espite [her] knowledge [of the Navy's policies], and despite the fact that a drug waiver was required in order for her to enlist in the U.S. Navy . . . . In light of this evidence, Appellant's wrongful use of marijuana was not an isolated occurrence." The Government concludes therefore that Appellant's preservice drug use was "directly related to the offense for which she was convicted."

There are three problems with this argument. First, it is not clear how the drug use of which Appellant was convicted was not an isolated event, especially when compared with the cases cited above in which this Court has found the requisite relationship between the charged crime and uncharged misconduct. The only apparent link is that Appellant was convicted of using the same drug that she admitted to using prior to her service. More than three years separated the incidents, however, and

there was no evidence that the uses were connected in a manner this Court has recognized. In terms of how "isolated" the events were, this Court in United States v. Shupe, 36 M.J. 431 (C.M.A. 1993), faced a similar question. In Shupe, this Court was presented with five specifications of drug distribution and explicitly found that they were "not isolated" from five uncharged instances of drug distribution that were admitted in aggravation. Id. at 436. This Court found that they were associated in that they were both part of a single "extensive and continuing scheme to introduce and sell [drugs]." Id. at 436. The "continuous nature of the charged conduct" was important to our conclusion. Id. at 436 (quoting United States v. Mullen, 29 M.J. 398, 400 (C.M.A. 1990)). There was no similar connection here.

Second, even assuming that the events were not isolated, this does not necessarily mean that they were "directly related." The correct standard for admission is not whether some prior instance is or is not isolated from a subsequent incident, but whether the former is directly related to the crime for which Appellant was convicted. In this case, it is not evident why the prior use or the pledge to refrain from drug

10

use is "directly related" to the offense for which Appellant was convicted.[2]

Third, as an alternative the Government suggests that the "directly related" aggravation derives not from the preservice drug use itself, but from the fact that the military provided Appellant with a second chance, a second chance that she proceeded to squander. According to this argument, it was not that Appellant's convicted behavior was associated with her prior drug usage, but that it was linked with her admission of preservice drug use and acknowledgment of the Navy's drug policy. However, this argument would appear to negate the meaning of the words "directly related."

First, all recruits are apparently required to sign the statement and thus there would be nothing "aggravating" about Appellant's case. Logically, for something to "aggravate" it must "make worse, more serious, or more severe" than it would otherwise have been. Webster's Ninth New Collegiate Dictionary 64 (9th ed. 1991). There is no other position for a servicemember to be in than to have signed the drug policy statement, and thus no way that that alone could be aggravating. See United States v. Kirkpatrick, 33 M.J. 132, 133 (C.M.A. 1991) (holding that "[w]e have long condemned any references to

---

[2] This is not to say that such evidence is never admissible on sentencing. In an appropriate case, such evidence may be admitted as rebuttal to the defense presentation.

departmental or command policies made before members charged with sentencing responsibilities" and thus that an accused knew of a service's policy against drug use is not valid aggravation) (citations and quotation marks omitted).

Second, although Appellant's use of drugs following the Navy's offer of accommodation was, in common parlance, morally "aggravating," it does not logically or legally make her admissions of priorservice use "directly related" to the charged offense. "Evidence in aggravation" in the sense of R.C.M. 1001(b)(4) refers to a limited set of uncharged misconduct.

Otherwise, every waiver for every offense could be admitted in aggravation for any offense occurring under the UCMJ, because each waiver would recognize that the military gave the accused a second chance that was abused. In the context of drug offenses, the military's policy on drug use, signed by all recruits, would be equally admissible as aggravating evidence, demonstrating as trial counsel argued in this case, aggravation on the ground that the accused knew the Navy's drug policy and violated it anyway. Such an approach would make the President's choice of the words "directly related" devoid of meaning.

The net effect of this analysis is that in admitting Appellant's preservice admissions of drug use and her understanding of the Navy's zero tolerance drug policy at sentencing, the military judge's actions satisfied prongs one

12

and two of the Powell test. In other words, this evidence was not directly related to the offense of which Appellant was convicted, and admitting the documents was clear and obvious error in light of the language of R.C.M. 1001(b)(4).[3] We turn now to the final part of Powell to determine if the admission materially prejudiced Appellant's substantial rights.

II. Prejudice

This Court recognizes that even without the admission of the uncharged misconduct there was properly admitted evidence that cast Appellant in a negative light. On the one hand, there were Appellant's futile and furtive attempts to avoid taking the drug test, and Appellant's lack of full contrition in her unsworn statement to the court.

On the other hand, Appellant's trial and sentencing was before members, rather than a military judge alone. While the "'experienced and professional military lawyers who find themselves appointed as trial judges'" are assumed to be able to appropriately consider only relevant material in assessing sentencing, the same cannot be said for members. United States v. McNutt, 62 M.J. 16, 26 (C.A.A.F. 2005) (quoting United States v. Lacy, 50 M.J. 286, 288 (C.A.A.F. 1999)). Members are less

---

[3] In light of our conclusion that the admitted evidence does not qualify under R.C.M. 1001(b)(4), it is unnecessary to address the second limitation on aggravation evidence, namely, its admissibility under M.R.E. 403.

likely to be able to separate relevant matters and make their decisions based solely on admissible evidence. Wingart, 27 M.J. at 136 (holding that relaxing the rules of admissibility at sentencing hearings would generate difficulties "especially . . . when sentencing is by court members instead of by the judge"); see also United States v. Bungert, 62 M.J. 346, 348 (C.A.A.F. 2006) (holding that "particularly in light of the fact that the sentencing was by a military judge sitting alone," appellant failed to show how impermissible evidence had prejudiced him).

That the military judge offered no curative instructions and emphasized that "all matters . . . offered in aggravation," and specifically, the exhibits at issue here, should be considered by the members in their sentencing analysis makes this case problamatic. "Particularly in a criminal trial, the judge's last word is apt to be the decisive word." United States v. Quintanilla, 56 M.J. 37, 43 (C.A.A.F. 2001).

Based on Appellant's four positive evaluations, absence of any negative evaluations, no prior nonjudicial punishments or convictions, her admission to having made a mistake, and a lack of any other aggravating testimony, it is not evident that Appellant so clearly deserved her bad-conduct discharge such that the evidence of preservice drug use was irrelevant to the members' decision. It seems likely that the outcome in the

sentencing portion of Appellant's trial may have been different had the evidence been properly excluded.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to the findings but reversed as to the sentence.  The sentence is set aside and the record of trial is returned to the Judge Advocate General of the Navy.  A rehearing on sentence may be ordered.