# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201600241**

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## ISAAC PADILLA
Aviation Machinist's Mate Third Class (E-4), U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain David M. Harrison, JAGC, USN.
Convening Authority: Commander, U.S. Naval Forces, Yokosuka, Japan.
Staff Judge Advocate's Recommendation: Commander Timothy D. Stone, JAGC, USN.
For Appellant: Captain James S. Kresge, USMCR.
For Appellee: Major Cory A. Carver, USMC; Captain Sean M. Monks, USMC.

———————————

Decided 29 September 2017

———————————

Before MARKS, JONES, and WOODARD, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

PER CURIAM:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of a single specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, (2012). The military judge sentenced the appellant to 12 months' confinement, reduction to pay grade E-1, and a bad-conduct

discharge. The convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered it executed.

The appellant asserts one assignment of error: the court committed plain error by admitting testimony describing photos as child erotica in aggravation at sentencing. We find no error materially prejudicial to the substantial rights of the appellant and affirm. Arts. 59(a), 66(c), UCMJ.

## I. BACKGROUND

Undercover investigation of peer-to-peer networks[1] led Naval Criminal Investigative Service (NCIS) special agents to suspect the appellant of downloading and possessing child pornography in August 2014. Pursuant to a command search authorization, NCIS seized electronic devices from the appellant's barracks room and his person. The appellant's Toshiba hard drive contained four still images and 19 videos depicting child pornography. Child pornography was on one of the appellant's iPhones as well.

The appellant pleaded guilty to possessing child pornography. During the providence colloquy with the military judge, the appellant explained that he used a single software application to search for pornography online and download it *en masse*. Among his search results were files identifiable as child pornography by their titles. Knowing he had accessed child pornography, the appellant nevertheless selected individual titles, downloaded the files, and later viewed them.

As part of the government's presentencing case, trial counsel presented exhibits documenting the NCIS investigation and forensic analysis of the appellant's electronic devices.[2] The appellant did not object to their admission. An NCIS investigative action reported that one of the appellant's iPhones "contained 12,241 images and 82 videos. The phone contained numerous images depicting adult pornography, bestiality, *child erotica, and other images of children in suggestive poses*."[3] An NCIS special agent testified at presentencing that "[o]ne of those phones didn't have child pornography but had thousands of images of child erotica, and the phone that did have the two images of child pornography also had images of child erotica but not as many."[4] The special agent defined "child erotica" as "short of lewd and

[1] The Defense Computer Forensics Laboratory defines "peer-to-peer" networks as networks of "computer systems that are connected to each other directly via the Internet and can share files between them without the need for a central server." Prosecution Exhibit (PE) 3 at 13.

[2] PE 2, 3, and 4.

[3] PE 4 at 1 (emphasis added).

[4] Record at 86.

lascivious display of the genitals or a child engaged in a sex act. . . . nude children or children that can be clothed either partially or fully and in some sort of provocative pose."[5] Trial defense counsel did not object to this testimony. In his closing argument, the trial counsel mentioned, "there's also erotica on these phones; and on these phones he had about 19,000 pieces of what may have been in some cases legal pornography, but he had those images of erotica."[6]

As part of the appellant's presentencing case, trial defense counsel submitted a treatment summary and risk assessment from the appellant's clinical psychologist.[7] According to the psychologist, the appellant reported child sexual abuse by family members beginning at age ten. "He began watching adult pornography as a teen and became addicted and wanted to see all types. Eventually as an adult he began to view pornography with increasingly younger participants. He stated that he was curious to understand more about how he was abused and how other young people felt about it."[8]

## II. DISCUSSION

### A. Evidence of child erotica in presentencing

The appellant alleges plain error in the military judge's admission of testimony about the appellant's possession of child erotica in presentencing because it did not directly relate to or result from his offenses, as required by RULE FOR COURTS-MARTIAL (R.C.M.) 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.).

When an appellant does not object to the admission of evidence at trial, we review the issue for plain error. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). Of note, the appellant waived any objection to relevant documentary exhibits, including "relevant [NCIS] evidentiary material," as part of his pretrial agreement.[9] Although the NCIS agent's testimony primarily repeated information from the NCIS reports, one notable difference was the agent's testimony that "thousands of images of child erotica" were on one of the appellant's iPhones.[10] Such quantification did not appear in the admitted NCIS reports. Under these unique circumstances, we will assume

---

[5] *Id*. at 86.

[6] *Id*. at 116.

[7] Defense Exhibit B.

[8] *Id*. at 2.

[9] Appellate Exhibit (AE) III at 2.

[10] Record at 86.

without deciding that the appellant forfeited rather than waived any objection to the evidence of child erotica and will review the appellant's claim under the plain error standard of whether "(1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *Hardison*, 64 M.J. at 281 (citation omitted). "When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly [and] is presumed capable of filtering out inadmissible evidence[.]" *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) (citation omitted).

The appellant asserts the military judge erred in his application of R.C.M. 1001(b)(4), which allows trial counsel to "present evidence as to any aggravating circumstances directly relating to or resulting from the offense of which the accused has been found guilty." In addition to a direct nexus to the charged offense, aggravation evidence must pass the MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) test. The military judge must balance "the probative value of any evidence against its likely prejudicial impact." *Hardison*, 64 M.J. at 281 (citation omitted).

### 1. *Direct relationship between child erotica and child pornography*

Child erotica differs primarily from child pornography in that (1) possession of child erotica is not explicitly prohibited under the UCMJ,[11] and (2) child erotica portrays something less than sexually explicit conduct. Our court has previously adopted a definition of child erotica applied in Article III federal courts: "'material that depicts young girls [or boys] as sexual objects or in a sexually suggestive way, but is not sufficiently lascivious to meet the legal definition of sexually explicit conduct[.]'" *United States v. Lancina*, No. 201600242, 2017 CCA LEXIS 436, *21, unpublished op. (N-M. Ct. Crim. App. 30 Jun 2017) (quoting *United States v. Rapp*, No. 201200303, 2013 CCA LEXIS 355, *24 n.15, unpublished op. (N-M. Ct. Crim. App. 30 Apr 2013)). The Manual for Courts-Martial defines child pornography as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 68b.c(1) (2016 ed.).

The relationship between child erotica and child pornography appears in military case law in multiple contexts. In *Lancina*, we "agree[d] that the

---

[11] Under certain circumstances, possession of child erotica may theoretically be in violation of Article 134, UCMJ, under clause 1 or clause 2 theories of liability. MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 60.a.-c. (2016 ed.).

presence of child erotica can be, at minimum, a factor in finding a substantial basis for probable cause to suspect the appellant committed a child pornography offense under the totality of the circumstances." *Id.* at *23. In *United States v. Griffing*, the Air Force Court of Criminal Appeals upheld a military judge's decision to admit child erotica to prove a fact of consequence regarding possession of child pornography. No. 38443, 2015 CCA LEXIS 101, *33, unpublished op. (A. F. Ct. Crim. App. 23 Mar 2015). The Air Force court relied in part on *United States v. Warner*, 73 M.J. 1 (C.A.A.F. 2013), in which "[o]ur superior court has cited, with approval, a decision by the United States Court of Appeals for the Third Circuit holding that in a prosecution for possession of child pornography, images of 'child erotica,' while legal to possess, may nonetheless be admitted to show intent to commit the charged offense."*Griffing*, 2015 CCA LEXIS 101, *34 (quoting *Warner*, 73 M.J. at 3) (citing *United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010)).

Under most circumstances, possession of child erotica is not misconduct. Nevertheless, the direct relationship required by R.C.M. 1001(b)(4) is often defined in the context of uncharged misconduct. Uncharged misconduct is considered directly related when it is not isolated but "closely related in time, type, and/or often outcome, to the convicted crime." *Hardison*, 64 M.J. at 282. *See also United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001) (noting "that when uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims, it is encompassed within the language 'directly relating to or resulting from the offenses of which the accused has been found guilty' under RCM 1001(b)(4)"); *United States v. Metz*, 34 M.J. 349, 351 (C.M.A. 1992) (finding "[a]n additional basis for logical relevance" when the uncharged acts are "part of the *res gestae*" of the offense and help place the evidence of identity and intent in context).

The appellant simultaneously possessed child pornography and child erotica, downloaded from the internet. In his providence colloquy, the appellant admitted to downloading the pornography from a single application that served as a one-stop shop for materials intended to satisfy sexual desires. Scrolling down a screen listing search results, the appellant selected file titles that appealed to him without knowing exactly what he was downloading.

In a similar case before the Air Force Court of Criminal Appeals, an "appellant repeatedly went to the Internet to search for child pornography and then downloaded over 1,400 files that either contained images of children engaging in sexually explicit conduct or depicted children as sexual objects or in a sexually suggestive way." *United States v. Mullings*, No. 38623, 2015 CCA LEXIS 405, *14-15, unpublished op. (A. F. Ct. Crim. App. 30 Sep 2015). Our sister court found that Mullings' possession of child erotica, while lawful,

was "closely related in time, type, and outcome to his possession of child pornography, and thus was admissible under R.C.M. 1001(b)(4)." *Id.* at *15. While the appellant in the case before us denied explicitly searching for child pornography, he acknowledged intentionally selecting titles clearly advertising the portrayal of children and downloading them.

Despite the appellant's contentions, child erotica's status as lawful, protected expression does not isolate it from child pornography. The similarities inherent in the sexualized depiction of children and the co-existence of child pornography and child erotica on websites and in personal digital collections, along with the case law, support finding that contemporaneous possession of child erotica is directly related to possession of child pornography and thus admissible under R.C.M. 1001(b)(4).

### 2. Prejudice

Although it is debatable whether evidence of child erotica constituted evidence of uncharged misconduct in this case, *Hardison* requires us to apply MIL. R. EVID. 403 and balance the probative value of aggravating evidence against its potential prejudicial effect. 64 M.J. at 281. The test for plain error—assuming, *arguendo*, that there was plain error—also requires us to determine whether the appellant suffered material prejudice to a substantial right. *Id.* In the presentencing context, we ask whether the erroneous admission "substantially influenced the adjudged sentence," *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005) (citations omitted), and employ the *Saferite* test to analyze:

> (1) the probative value and weight of the evidence (including the 'content and tone' of testimonial evidence);

> (2) the importance of the evidence in light of other sentencing considerations, including the military judge's instructions;

> (3) the danger of unfair prejudice resulting from the evidentiary ruling; and

> (4) the sentence actually imposed, compared to the maximum and to the sentence the trial counsel argued for.

*Id.* at 413 (Crawford, J., dissenting) (citing *United States v. Saferite*, 59 M.J. 270, 274-75 (C.A.A.F. 2004)).

First, the probative value and weight of the evidence of the appellant's possession of child erotica was minimal. None of the images of child erotica was admitted for the military judge's or this court's review. The record contained no description of the images characterized as child erotica. The appellant's child erotica had neither content nor tone. Its probative value presumably lay in demonstrating the breadth and depth of the appellant's

interest in sexualized depictions of children and rebutting any suggestions that he did not seek child pornography but merely accepted it when it was presented to him.

In light of the other evidence presented in sentencing, by the government and the appellant, the evidence of child erotica was unimportant. The military judge's obligation to view and ability to consider four images and 19 videos of children engaged in sexually explicit conduct overshadow his more abstract awareness that the appellant also possessed thousands of images of children not engaged in sexually explicit acts. The NCIS reports, which the appellant accepted as evidence as part of his pretrial agreement, referred to his possession of more than 12,000 images, some of which were child erotica. With regard to a potential predilection toward children, the appellant acknowledged, through his psychologist's report, that his pornography addiction had evolved to include viewing children. Presumably for extenuation and mitigation, the appellant attributed this to his own history of sexual abuse as a child.

For the reasons cited above, the danger of unfair prejudice from admission of the testimony about child erotica is negligible, if not non-existent.

The military judge awarded the appellant 12 months' confinement, the maximum amount available at a special court-martial. But the adjudged sentence must be considered in light of the appellant's agreement to plead guilty in return for referral to a lesser forum.[12] The appellant's sentence falls far short of the authorized maximum punishment of ten years' confinement and a dishonorable discharge and is well within the appropriate range of punishment for the volume of child pornography possessed.

Not only was the testimony about the appellant's possession of child erotica directly related to his charged possession of child pornography, but even its minor probative value far outweighed its potential prejudicial effect.

While this court finds no error, much less plain, clear, or obvious error, in the NCIS agent's testimony, there was also no material prejudice to the appellant's sentence or his substantial rights.

## B. Correction of court-martial order

The appellant pleaded guilty to possessing child pornography "between on or about 24 April 2013 to 3 December 2014."[13] The court-martial order reflects possession until about December 2014 but omits the day of the

---

[12] AE III and IV.

[13] Charge Sheet.

month. The appellant is entitled to official records that correctly reflect the results of his proceeding. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). Accordingly, we order corrective action in our decretal paragraph.

### III. CONCLUSION

The finding of guilty and the sentence as approved by the convening authority are affirmed.

The supplemental court-martial order shall reflect that the offense occurred "between on or about 24 April 2013 to 3 December 2014."

For the Court



R.H. TROIDL
Clerk of Court