# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39845 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jacob M. HUFF**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 18 January 2022

———————————

*Military Judge:* Thomas J. Alford; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 9 October 2019 by GCM convened at Offutt Air Force Base, Nebraska. Sentence entered by military judge on 6 December 2019 and reentered on 3 May 2021: Bad-conduct discharge, confinement for 24 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Major Amanda E. Dermady, USAF; Major Sara J. Hickmon, USAF.

*For Appellee:* Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge KEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge ANNEXSTAD joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

KEY, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of two specifications of possessing child pornography and two specifications of viewing child pornography, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 24 months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.

Appellant's case is before us for a second time. Appellant raised four issues when this case was originally presented to us, one of which asserted that the convening authority erred by not taking action on Appellant's sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.)). In an earlier opinion, this court agreed with Appellant and remanded his case to the Chief Trial Judge, Air Force Trial Judiciary, for corrective action. *See United States v. Huff*, No. ACM 39845, 2021 LEXIS 168, at *9–10 (A.F. Ct. Crim. App. 8 Apr. 2021) (unpub. op.). The convening authority subsequently approved Appellant's sentence, resulting in a new entry of judgment. Another assignment of error raised by Appellant was that the entry of judgment was erroneous in that it did not reflect a charge and its specification alleging sexual assault had been withdrawn and dismissed *with prejudice*. We note this aspect of the entry of judgment was addressed during the remand. Because the entry of judgment now reflects the dismissal with prejudice, this assignment of error is moot, and we now turn to Appellant's remaining two issues: (1) whether certain language should be excepted from two specifications; and (2) whether the military judge erred by admitting a certain exhibit over defense objection. We agree, in part, with Appellant regarding the first of these issues, and we take corrective action in our decretal paragraph. Finding no further error materially prejudicial to Appellant's substantial rights, we affirm the findings, as modified, and sentence as reassessed.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the terms of the pretrial agreement, the Government withdrew and dismissed one charge and its specification of sexual assault charged as a violation of Article 120, UCMJ, 10 U.S.C. § 920.

## I. BACKGROUND

Appellant enlisted in the Air Force in August 2011 and married in September 2015. Over a period of about two years, Appellant and his wife, Ms. AH, downloaded and viewed child pornography together while Appellant was stationed at Royal Air Force Mildenhall, United Kingdom. To do so, they used a laptop computer which Appellant backed up at some point to an external hard drive. After he backed up the laptop, but while still living in the United Kingdom, Appellant deleted the pornography off the computer. From then on, he used his mobile phone to download and view child pornography.

In March 2016, Appellant and Ms. AH moved from the United Kingdom to Nebraska pursuant to Appellant's military orders, and they had a son together in June 2017. While living in Nebraska, Appellant continued to use his phone to access child pornography. Late in 2017, he sold the laptop, but he retained the external drive which contained the backed-up data.

In August 2018, Ms. AH moved out of the off-base home she shared with Appellant in Nebraska, and Appellant filed for divorce a few weeks later. The following month, Ms. AH told military authorities Appellant had sexually assaulted her, and in making that complaint, she disclosed that Appellant possessed child pornography. When Appellant was called in for questioning, he consented to a search of his phone and his house, leading to the discovery of child pornography on his phone and two external hard drives. Investigators found 3,446 images and 15 videos of "suspected child pornography and child erotica" on the three devices; they also determined Appellant had input search terms associated with child pornography into Internet search engines. An extended online conversation between Appellant and Ms. AH—which took place from October to November 2014, before they were married—was also discovered. In the conversation, Appellant and Ms. AH fantasize about sexually assaulting children they might one day have and discuss their efforts at finding child pornography on the Internet.

## II. DISCUSSION

### A. Possession and Viewing of Videos in Nebraska

Appellant was charged with both possessing and viewing child pornography in the United Kingdom as well as in Nebraska. As a result, he faced four total specifications—one specification of possession and one specification of viewing for each location. The United Kingdom specifications were charged as occurring between on or about 25 June 2014 and on or about 9 March 2016, while the Nebraska specifications were charged as occurring between on or about 10 March 2016 and on or about 28 November 2018. Each of these specifications alleges Appellant either possessed or viewed "images and videos." On

appeal, Appellant contends the evidence supports a conclusion that he only possessed and viewed images in Nebraska; he asks us to except and dismiss the words "and videos" from the two Nebraska specifications.

### 1. Additional Background

According to the stipulation of fact that Appellant agreed to, two external hard drives were seized during a search of Appellant's house in Nebraska. The first of these drives contained 15 video files and more than 2,500 images of "suspected child pornography and child erotica" found in subfolders and the unemptied recycling bin on the drive. The second drive contained a backup file which included a single video and more than 1,300 images of "suspected child pornography and child erotica," many of which were duplicates of the images found on the first hard drive. Appellant's mobile phone contained 90 thumbnail images of "suspected child pornography," but no videos.

The stipulation further explains that of all the images and videos of "suspected child pornography and child erotica," 601 images and a video amounted to "known" child pornography, according to "hash sets" obtained from ProjectVic, an organization which apparently develops technologies available to law enforcement to use in investigating allegations of sexually exploitative conduct. Only one image on Appellant's devices resulted in a National Center for Missing and Exploited Children (NCMEC) "hit." Similar to ProjectVic, NCMEC assists law enforcement entities with identifying victims featured in child pornography.

At Appellant's court-martial, the Government introduced Prosecution Exhibit 2, a disc which contained 26 images and seven videos. The parties stipulated that these were "a sampling of the pictures and videos" found on Appellant's three devices. Specifically, seven images and all seven videos were from Appellant's first external drive; five images were from the backup file on the second drive; and the remaining images were thumbnail images from Appellant's phone. Although Appellant stipulated he possessed and viewed images and videos of child pornography in both the United Kingdom and in Nebraska, the stipulation does not explain if any of the images and videos in Prosecution Exhibit 2 were among those identified by either ProjectVic or NCMEC as "known" child pornography. The parties also did not stipulate that the images in Prosecution Exhibit 2 actually amounted to child pornography.

During his providence inquiry, Appellant told the military judge that while he was stationed at Royal Air Force Mildenhall, he would download child pornography with his laptop and either save it on the computer itself or "mov[e] it over to an external hard drive," and Ms. AH would do the same. Appellant was not precise in terms of the number or types of files he downloaded. For example, with respect to the United Kingdom possession specification, Appellant

referred at one point to "the photos and videos" he had downloaded, which included "some videos of seemingly underage girls touching their genitals." Appellant followed up on this statement by telling the military judge, "I knew when I downloaded it that it was child pornography."

Later, however, the military judge asked Appellant approximately how many videos and images of child pornography he possessed while he was in the United Kingdom, and Appellant answered, "Sir, I know that I possessed at least one, but I don't know the exact number." The military judge asked, "At least one what, image or video?" Appellant replied, "Image and video." The military judge then asked, "At least one image and at least one video?" Appellant answered, "Yes, sir," and then said, "I only remember one video, but I would say the images would be at least 15." The military judge asked Appellant to describe "the video" Appellant remembered and Appellant did so. At one point during this discussion, Appellant said, "I remember a few videos, but I wasn't exactly sure if they were under age or not." As the inquiry into the United Kingdom offenses continued, the military judge repeatedly referred to "images and videos," and Appellant did not indicate that those references to "videos" in the plural were inaccurate.

Appellant told the military judge he deleted the files off of his laptop before moving to Nebraska because he wanted to be "done with the child pornography." The military judge asked Appellant if there was some reason he kept the pornography on the external hard drive, and Appellant said, "I think at one point it automatically backed up onto that hard drive, and I never really double-checked. . . . I didn't know exactly, like, what had been transferred to the hard drive, but I knew that some stuff was transferred to the hard drive."

As for the Nebraska possession specification, Appellant explained he and his wife accessed child pornography there "on a few occasions," but that he did "not remember every image or video that [they] accessed." He acknowledged he had maintained control of and access to the devices upon which he had stored child pornography while he was in the United Kingdom and transported those devices to Nebraska. When asked by the military judge if Appellant had the images deleted from the laptop on an external hard drive while living in Nebraska, Appellant said he did, but that he "had forgotten that they were there." Appellant explained that he had never accessed the hard drives[3] after leaving the United Kingdom, that "[t]hey kind of just stayed in storage," and that he only learned child pornography was still on the drives when agents of the Air Force Office of Special Investigations told him what they had found.

---

[3] Up until this point in the providence inquiry, Appellant and the military judge had only referred to a single hard drive.

After Appellant disavowed accessing the hard drives while he lived in Nebraska, the military judge remarked, "So mainly when we're talking about possession of child porn here, it's going to be on this . . . cell phone?" Appellant answered affirmatively. From there, the military judge began asking Appellant about the thumbnail images taken from his phone, none of which Appellant said he remembered. Appellant said he would use his phone to view images and then save them to his phone, sometimes with his wife and sometimes by himself. The military judge asked, "And what were those—and these were in the form of what? JPEGs, again, type images?" Appellant answered, "Yes, sir." Shortly thereafter, the military judge asked, "And this was just images, not videos?" Appellant responded, "From what I remember, yes." From then on, the military judge only asked Appellant about possessing "images" and did not refer to any videos.

When asked about the Nebraska viewing specification, Appellant said, "[O]f all the pictures that I remember, I viewed them before I downloaded them." The military judge asked, "So each of the pictures that you possessed on your phone, you also viewed those pictures?" Appellant answered affirmatively. After a few more questions, the military judge asked, "And the form of those visual depictions, again, that you viewed, not videos, these were just still images?" Appellant again answered affirmatively. Throughout the rest of the providence inquiry on this specification, the military judge only referred to "images" and "depictions," and not "videos."

**2. Law**

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A military judge may only accept a guilty plea after first ensuring there is a factual basis for that plea. Rule for Courts-Martial (R.C.M.) 910(e); *United States v. Care*, 40 C.M.R. 247, 253 (1969). A military judge abuses his or her discretion by accepting a guilty plea "without an actual factual basis to support it." *United States v. Price*, 76 M.J. 136, 138 (C.A.A.F. 2017) (citing *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012)). "[A] military judge must elicit actual facts from an accused and not merely legal conclusions." *Id.*

Under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we may affirm only so much of the findings and sentence that are correct in law and fact and, based on the entire record, should be approved. In performing our review, we are permitted to narrow the scope of a conviction in order to render it legally and factually sufficient. *See United States v. English*, 79 M.J. 116, 120 (C.A.A.F. 2019) (citing *United States v. Piolunek*, 74 M.J. 107, 112 (C.A.A.F. 2015)).

**3. Analysis**

Appellant argues on appeal that the military judge failed to elicit a sufficient factual basis to establish that he possessed and viewed *videos* of child pornography while he was in Nebraska. He does not explicitly ask us to find his pleas improvident. Instead, he asks us to except the words "and videos" from two specifications of Charge II: Specification 3 (possession of child pornography) and Specification 4 (viewing child pornography).

We find no support in the record for Appellant's claim with respect Specification 3. Appellant's hard drives were seized while he was living in Nebraska, and Appellant stipulated that the seven videos included in Prosecution Exhibit 2 were found on one of the hard drives.[4] Appellant also explained that he not only saved child pornography on at least one of the hard drives, he employed one of them to back up the laptop he used to seek out child pornography. He told the military judge he brought the drives with him to Nebraska from the United Kingdom, and the subsequent forensic analysis corresponds with Appellant's explanation in that child pornography was found both in subfolders on one drive and in a backup file on the other. Appellant admitted to possessing both images and videos of child pornography in Nebraska, and the record amply supports his admissions before the military judge. The fact Appellant might not specifically recall which videos were placed on the hard drives is not dispositive. *See, e.g.*, *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) ("If an accused is personally convinced of his guilt based upon an assessment of the [G]overnment's evidence, his inability to recall the specific facts underlying his offense without assistance does not preclude his guilty plea from being provident."). In the end, Appellant admitted to possessing the videos, and forensic analysis of his hard drives corroborated that admission. Thus, we will not disturb Specification 3.

We reach a different conclusion with regards to Specification 4. While Appellant stipulated that he viewed both digital images and videos of child pornography in Nebraska, his providence inquiry only supported a viewing of images. Indeed, the military judge squarely asked Appellant if he was referring to images or videos when Appellant discussed saving pictures to his phone. The military judge asked, "And this was just images, not videos?" Appellant replied, "From what I remember, yes." Thereafter, the military judge only referred to images with respect to what Appellant viewed while he was in Nebraska. According to Appellant, he never viewed anything on the hard drives after he

---

[4] We have reviewed Prosecution Exhibit 2 and determined that it does include videos of child pornography.

moved to Nebraska, so there is very little in the record from which we could conclude Appellant, in fact, watched videos of child pornography in Nebraska.

Appellant's admission that he viewed both images and videos of child pornography in Nebraska is found in one of four short paragraphs in the stipulation in which Appellant simply admits to each of the four specifications of Charge II. Such a stipulation is more akin to a legal conclusion than a factual basis for his plea, and there is no other reference in the stipulation to him viewing videos of child pornography in Nebraska.[5] Despite Appellant's admission in the stipulation, Appellant seemingly took a different stance before the military judge during the "just images" exchange. One possible interpretation of Appellant's answer was that Appellant was saying he only *saved* images to his phone, and not videos. The military judge, however, not only did not clarify the matter, but stopped asking Appellant whether he viewed videos at all in Nebraska, focusing instead on images. Moreover, we see little else in the providence inquiry supporting the conclusion Appellant was viewing videos as well as still images of child pornography on his phone.

Based on our authority under Article 66(d), UCMJ, we will set aside and dismiss the words "and videos" from Specification 4 of Charge II in our decretal paragraph. We have conducted an analysis of the totality of circumstances presented in this case, and we conclude we are able to reassess the sentence in accordance with the principles set forth in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). Under the facts presented in this case, the matter of whether Appellant viewed both videos and images of child pornography in Nebraska or just images has no perceptible impact on the penalty landscape. Based upon the entire record, we are confident that the military judge would have imposed—and the convening authority would have approved—a sentence of at least that which was adjudged even in the absence of the words "and videos" from the one specification.

## B. Sentencing Evidence

Once the military judge convicted Appellant and the court-martial entered the sentencing phase, the military judge admitted the 2014 online conversation between Appellant and Ms. AH over the Defense's objection. Appellant contends the military judge abused his discretion in doing so.

### 1. Additional Background

The conversation admitted as Prosecution Exhibit 3 consisted of approximately 235 messages, some 74 percent of which involved Appellant and Ms.

---

[5] We accept as true factual matters the parties agree to in stipulations of fact, but not necessarily legal conclusions found therein. *United States v. Simpson*, 81 M.J. 33, 36, n.3 (C.A.A.F. 2021).

AH fantasizing about sexually assaulting children—primarily children they might one day have together. In about 22 percent of the messages, the two generally expressed their interest in and efforts at finding child pornography online. While the messages about sexually assaulting children are graphic and lurid, the messages regarding online pornography—such as Appellant expressing his concern over Ms. AH's practice of creating member accounts on pornography sites because of the fees charged—are rather pedestrian in comparison.

In the stipulation of fact, the parties agreed the messages were, in fact, between Appellant and Ms. AH and had been recovered from devices seized from Appellant. The parties did not, however, stipulate to the admissibility of the conversation.

In objecting to the exhibit, Appellant argued that the messages neither resulted from nor were directly related to the conduct of which Appellant had been convicted. He also argued the messages were not relevant under Mil. R. Evid. 401 and should be excluded under Mil. R. Evid. 403 in light of their highly prejudicial nature. The Government argued the messages demonstrated Appellant's interest in young girls, as he and Ms. AH discussed their desire to obtain child pornography.

The military judge overruled the Defense's objection, finding it was appropriate for the Government to offer "evidence which places the offense in proper context," although he did not state his rationale for this conclusion. The military judge further concluded the messages were "relevant with at least the facts and circumstances of the offense" and amounted to "an aggravating circumstance directly relating to or resulting from the offenses to which [Appellant had] been found guilty." He said the probative value of the evidence was not substantially outweighed by any of the considerations in Mil. R. Evid. 403, but he did not place his analysis on the record.

In his unsworn statement, Appellant addressed the matter of Prosecution Exhibit 3. He said that before he and Ms. AH lived together, they would send each other sexually explicit messages, but that he had blocked this particular conversation "out of [his] brain, and when [he] saw it again in preparation for trial, [he] was mortified." He went on to explain that he had seen it as "fantasy talk" at the time, but now that he is a father, he "would never wish that kind of talk on anyone's child," and "[f]antasy or not, there's no distinction in [his] mind today." Appellant described the conversation as "disturbing" and told the military judge "there are not enough words to explain how deeply ashamed [he is]," but that he wanted to make it clear that he has "never thought of [his] son in that kind of way and never will." In his sentencing case, Appellant admitted a number of pictures of himself, many with his young son.

Trial counsel's sentencing argument included brief references to the conversation in Prosecution Exhibit 3, but she only commented on the portions of the conversation related to Appellant's interest in child pornography; she did not comment on the assault-fantasy messages at all. Trial defense counsel, on the other hand, referred to those portions of the conversation to portray Ms. AH as being responsible for instigating some amount of Appellant's behavior. Trial defense counsel also pointed to the absence of any evidence that Appellant sought to actually assault a child and asked the military judge to give the messages "very little weight."

After sentencing Appellant, the military judge told the parties:

> I also want to clarify with respect to Prosecution Exhibit 3, I want to—after having looked at that exhibit closer, I just want to note for the record that I only considered Prosecution Exhibit 3 for the relevant purpose the [G]overnment articulated in its response to defense counsel['s] objection regarding the accused's state of mind concerning his intent to obtain pictures and videos of underage girls, as well as whether the idea originated and/or continued with his wife or from his wife. I did not consider any discussion or chats regarding incest, the desire to travel to have sex with underage individuals or any other purported misconduct not relating to or stemming from the charged offenses.

### 2. Law

A military judge's decision to admit evidence at sentencing is reviewed under the abuse of discretion standard. *United States v. Carter*, 74 M.J. 204, 206 (C.A.A.F. 2015) (citation omitted). Pursuant to R.C.M. 1001, the Government may present evidence in aggravation during the sentencing portion of an accused's court-martial. Evidence in aggravation includes that which pertains to "any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4).

Evidence qualifying under R.C.M. 1001(b)(4) must also pass muster under Mil. R. Evid. 403. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). Under that rule, a military judge may exclude evidence if its probative value is substantially outweighed by such considerations as its tendency to result in unfair prejudice, confuse the issues, or mislead the members. A military judge has "wide discretion" in applying Mil. R. Evid. 403, and we exercise "great restraint" in reviewing such applications when the military judge articulates his or her reasoning on the record. *United States v. Humpherys*, 57 M.J. 83, 91 (C.A.A.F. 2002) (citations omitted).

Military judges abuse their discretion when their "factual findings are clearly erroneous, view of the law is erroneous, or decision is outside of the

range of reasonable choices." *United States v. Hutchins*, 78 M.J. 437, 444 (C.A.A.F. 2019) (citations omitted). In applying the Mil. R. Evid. 403 balancing test, military judges enjoy "wide discretion." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citations omitted). However, we give less deference to military judges' decisions if they do not explain their analysis on the record, and we give military judges no deference when they fail to conduct the analysis at all. *Id.* (citations omitted).

### 3. Analysis

Appellant argues the military judge erred in admitting Prosecution Exhibit 3 under the theory that its probative value was substantially outweighed by a danger of unfair prejudice and that we should reassess his sentence as a remedy. In support of this argument, Appellant contends the military judge did not provide any analysis on this point. We agree the military judge's analysis under Mil. R. Evid. 403 was lacking, therefore we give the military judge's decision less deference than we otherwise would. Nonetheless, we conclude Appellant is not entitled to relief because he cannot demonstrate he was prejudiced.

At first blush, the military judge's decision to admit Prosecution Exhibit 3 in its entirety seems highly questionable. Three-quarters of the document revolved around Appellant's and Ms. AH's odious fantasies about not only sexually abusing children, but raising them in a household where such abuse is normalized and welcomed. The remainder of the document contained comparatively tepid discussions about whether to look for child pornography online and which websites were more or less likely to have the material they were looking for.

An accused's attitude toward his or her offenses is a relevant matter in sentencing. *United States v. Alis*, 47 M.J. 817, 825 (A.F. Ct. Crim. App. 1998) (citing *United States v. Anderson*, 25 M.J. 779, 781 (A.C.M.R. 1988)). Appellant, however, was not charged with sexually assaulting any children or attempting to do so. Thus, the connection between the messages fantasizing about assaulting children and proper sentencing considerations in Appellant's case is tenuous, at best. While the Government argued the conversation was admissible to demonstrate Appellant's interest in child pornography, the probative force of that proposition is fairly minimal given Appellant had already admitted he and Ms. AH sought out the pornography for the purpose of sexual arousal. The likelihood the conversation would result in unfair prejudice, on the other hand, was substantial, especially insofar as evidence was before the military judge that Appellant was the father of a young child. Evidence of fantasies about sexually assaulting children would likely cause a sentencing authority to question whether Appellant really was the good father he sought to portray himself as. Appellant likely recognized this as well, given his perceived need to attempt to rebut the evidence in his unsworn statement.

Where Appellant's argument loses its force, however, is the point at which the military judge determined he would limit his consideration of the exhibit to Appellant's "state of mind concerning his intent to obtain pictures and videos of underage girls, as well as whether the idea originated and/or continued with his wife or from his wife." Arguably, the better course of action would have been to make this assessment prior to admitting the exhibit in the first place, but the fact of the matter is that the military judge ultimately decided to disregard the assault-fantasy portions of the conversation and only consider those excerpts which actually did pertain to Appellant's attitude toward the offenses he was convicted of. Importantly, Appellant was sentenced by a military judge versed in parsing evidence and determining what information he will and will not consider, even after being exposed to the information. Appellant has not identified any reason why we should not conclude the military judge did not do as he said he would.[6]

In light of the military judge's decision to limit his consideration of Prosecution Exhibit 3 to matters directly related to Appellant's offenses, we conclude Appellant has not shown he was prejudiced by the exhibit's admission. Therefore we need not determine whether the military judge erred in admitting it. Appellant is not entitled to the relief he requests.

### III. CONCLUSION

The finding of guilty to Specification 4 of Charge II is modified by excepting the words "and videos." The excepted words are **SET ASIDE** and **DISMISSED WITH PREJUDICE**. The remaining findings and the sentence, as entered and reassessed, are correct in law and fact, and no error prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

---

[6] The military judge did not provide a line-by-line breakdown of which portions of Prosecution Exhibit 3 he did and did not consider. From our review of the document, we conclude the fantasy portions of the conversation clearly stand apart from the discussions about seeking pornography on the Internet. In the absence of clear evidence to the contrary, we presume military judges know and follow the law. *United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004).

Accordingly, the findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court