UNITED STATES, Appellee,

v.

Rene W. SHUPE, Engineman Fireman Recruit U.S. Navy, Appellant.

No. 67,788.

NMCM 91-1607.

U.S. Court of Military Appeals.

Argued Dec. 1, 1992.

Decided April 19, 1993.

For Appellant: *Lieutenant Lisa M. Higdon*, JAGC, USNR (argued); *Major Joseph B. Gilbert*, USMC and *Lieutenant Peter Van Hartesveldt*, JAGC, USNR.

For Appellee: *Lieutenant Commander Stephen A. Stallings*, JAGC, USN (argued); *Colonel T.G. Hess*, USMC and *Commander W.F. Shields*, JAGC, USN (on brief); *Lieutenant Commander J. Richard Chema*, JAGC, USN.

*Opinion of the Court*

GIERKE, Judge:

Before a military judge sitting as a general court-martial, appellant pleaded guilty to conspiracy to introduce lysergic acid diethylamide (LSD) onto a naval base with intent to distribute, seven specifications of loan-sharking in violation of a Navy regulation, three specifications of possession of LSD with intent to distribute, five specifications of distributing LSD, and one specification of soliciting another to possess LSD, in violation of Articles 81, 92, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 892, 912a, and 934, respectively. The military judge sentenced appellant to a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to the lowest enlisted grade. In accordance with a pretrial agreement, the convening authority suspended for 12 months all confinement in excess of 5 years and forfeitures in excess of $554.00 pay per month. The Court of Military Review affirmed in an unpublished memorandum opinion dated February 19, 1992. This

Court granted review of the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW MISINTERPRETED THIS COURT'S HOLDINGS IN *UNITED STATES V. MULLENS,* 29 MJ 398 (CMA 1990), AND *UNITED STATES V. WINGART,* 27 MJ 128 (CMA 1988), WHEN IT UPHELD THE ADMISSION OF UNCHARGED OFFENSES DURING PRESENTENCING.

Only the drug charges are involved in the granted issue. The challenged evidence involves the testimony of five witnesses: Engineman Fireman Recruit (ENFR) Chaney, Special Agent (SA) Burkhardt, ENFR Carter, Electrician's Mate Fireman Recruit (EMFR) Boyd, and ENFR Brown.

## I. Pleas and Findings

Appellant was charged with conspiring with ENFR Chaney and David Eckart, a civilian, to introduce LSD onto the Naval Training Center, Great Lakes, Illinois, from on or about August 18, 1990, to on or about October 8, 1990. He attempted to plead guilty to conspiring with ENFR Chaney only, but not with David Eckart, from "late August to late September." Trial counsel objected, stating, "I'd like the conspiracy [to] continue at least to the date alleged in the specification." The military judge responded:

Well, wait a minute. We're not going to sit around and hash out dates in here. It's a plea, so you guys got to decide on what the plea is, what the pretrial agreement call[s] for. Ten minutes. Think about this thing and come back in here, and let's go through the pleas at least without argument on—on the matters. Court's recessed.

When the court-martial reconvened, appellant pleaded guilty to the conspiracy specification as charged except for the words, "and David Eckart, civilian."

The conspiracy specification to which appellant pleaded guilty alleged that the overt act in furtherance of the conspiracy occurred when ENFR Chaney "introduced and distributed Lysergic Acid Diethylamide, a schedule I controlled substance, on board Naval Training Center, Great Lakes, Illinois." No date of distribution or specific amount of LSD was alleged in the specification.

With respect to the specifications alleging possession of LSD with intent to distribute (Charge III), appellant was charged with possessing 20 dosage units of LSD on August 25, 1990, but pleaded guilty to possessing 6 units in "late August" (specification 2). He was charged with possessing 20 units of LSD on September 3, 1990, but pleaded guilty to possessing 10 units in "early September" (specification 3). He was charged with possessing 40 units on September 22 but pleaded guilty to possessing 10 units in "late September" (specification 4).* He pleaded not guilty to specifications 1, 5, 6, and 7.

With respect to the charged distributions of LSD (Additional Charge I), appellant was charged with distributing 1 unit "more or less" of LSD in "mid-October" and pleaded guilty to distributing 1 unit in "late September" (specification 1). He was charged with distributing 1 unit more or less of LSD in "early November" but pleaded guilty to distributing 1 unit in "late September" (specification 2). He was charged with distributing 1 unit more or less of LSD in October 1990 but he pleaded guilty to distributing 10 units to a different recipient from the one charged (specification 3). He was charged with distributing an unknown amount of LSD in August 1990 but pleaded guilty to distributing 2 units (specification 9). He was charged with distributing 5 units more or less of LSD in October but pleaded guilty to distributing 5 units in September (specification 10). He pleaded not guilty to specifications 4, 5, 6, 7, 8, and 11.

---

* As to specification 4 of Charge III, appellant pleaded guilty to possessing 10 units but was convicted of possessing 8 units.

The guilty pleas were the product of intense pretrial negotiation intended to limit the number of illegal transactions for which appellant could be tried. The pretrial agreement obligated appellant to plead guilty as he did, by extensive exceptions and substitutions; obligated the Government to withdraw all specifications to which appellant pleaded not guilty; obligated the convening authority to suspend all confinement in excess of 5 years and forfeitures in excess of $554.00 pay per month for 12 months; and included an "amnesty clause" which provided as follows:

That the Government expressly agrees not to go forward with any other additional charges for any actions committed on or before the date of this agreement. For purposes of clarification and not by way of limitation, the Government expressly agrees that it will not attempt to refer additional charges for wrongful use, possession with intent to distribute, distribution, conspiracy or wrongful introduction of any controlled substance which occurred on or before the date of this agreement. In addition, the Government expressly agrees that it will not attempt to refer charges concerning or relating to suborning perjury, obstruction of justice or orders violations. The charges referred on or before the date of this agreement are intended to be the sole charges brought by the Government against FN Shupe for any alleged criminal actions occur[r]ing on or before the date of this agreement.

The Government attempted to withdraw from the pretrial agreement prior to trial, but the military judge required the Government to adhere to it.

During the inquiry into the factual predicate for the plea of guilty to the specification alleging conspiracy, appellant told the military judge that sometime around September 7, 1990, he told Chaney that he was interested in obtaining LSD. Appellant stated that he had obtained LSD from Chaney on a previous occasion. Chaney obtained an unspecified quantity of LSD, brought it on board the naval base, and sold 10 dosage units to appellant for $40.00, which appellant had obtained from ENFR Allen, the intended recipient of the LSD. The military judge did not inquire whether there were any other acts in furtherance of the conspiracy but simply announced, "I'm satisfied with the providency." The military judge convicted appellant of the conspiracy as charged, except for the words, "and David Eckart, civilian."

During the plea inquiry regarding the three possession specifications (Charge III) to which appellant had pleaded guilty, appellant admitted obtaining 6 units of LSD from ENFR Trevino on or about August 25 (specification 2); 10 units from ENFR Chaney in early September (specification 3); and an additional 10 units from Chaney in late September (specification 4).

During the plea inquiry regarding the five distribution specifications (Additional Charge I) to which appellant had pleaded guilty, appellant admitted giving 1 unit to Fireman Apprentice (FA) Brown in late September (specification 1); another unit to FA Brown at another date in late September (specification 2); 10 units to ENFR Jackson in October (specification 3); 2 units on two occasions to EMFR Boyd in late August (specification 9); and 5 units to ENFR Goss in September (specification 10). The military judge found appellant guilty by exceptions and substitutions in accordance with his pleas.

## II. Aggravation Evidence

ENFR Chaney, appellant's co-conspirator, testified as a prosecution witness during the sentencing hearing, over repeated defense objections on the ground that the testimony related to uncharged misconduct outside the scope of the conspiracy.

During the sentencing hearing, there was a fundamental disagreement between the prosecution and the defense regarding the scope of the conspiracy admitted by appellant's pleas of guilty. The defense theory of the case was as follows:

If you read the specification as charged, it alleges that Fireman Recruit Shupe had a conspiracy with Fireman Chaney to introduce some amount of LSD. In his

providency inquiry, he—he testified that he had formed an agreement, after a simple distribution of ten hits, a conspiracy with Fireman Chaney to introduce ten more hits. Your Honor, the defense position is that a conspiracy is not an unlimited or amorphous form, but it has a definite scope. And the Government is now bound by the scope of that conspiracy.

Trial counsel disagreed, arguing as follows:

Sir, conspiracies may take many forms. This conspiracy, the Government's position, involved several transactions over a period of time alleged, and it is very allowable to have multiple crimes take place pursuant to one conspiracy. That's the way it was charged. Although the accused didn't—he limited the scope of his conspiracy in his opinion to a very narrow transaction, it's now the Government's opportunity to explain the full scope of this conspiracy.

The military judge interpreted the specification to which appellant pleaded guilty as follows:

[T]he charge on conspiracy Charge I reads "did from on or about 18 August to on or about 8 October 1990, conspire," which indicates that there was more than one conspiracy all being charged in one, and I wouldn't think that the Government is now bound by the recitation of the facts by this accused; that the Government may bring in aggravation that there was more than one conspiracy because it has been charged "from," "to," "did conspire," which doesn't mean that did conspire on or about. It was "from," "to," which leads the court to believe that the specification alleges a series or at least more than one conspiracy.

The disagreement about the scope of the conspiracy to which appellant had pleaded guilty culminated in the following exchange:

DC: If the Government had, Your Honor, intended to charge a series of conspiracies, then they should have alleged a series of conspiracies. Fireman Shupe's

providency inquiry revealed that the agreement was reached on a certain date in late August and culminated, that it continued and culminated, in late September or the first days of October. And I think that he pled to a single conspiracy as charged. I don't see any language— (interrupted)

MJ: No, it's not charged that way. It says from such date to such date did conspire which means more than one, would have been "did on such and such date" or "on or about so and so did something in this case." I—you're on the record, Mr. Purnell. I don't agree with you at all in this case here. The Government has charged this as—as more than one conspiracy in the spec—as the word—as the specification is worded, and the court does not find that the Government is bound by the recitation of facts by this accused in matters in aggravation. So I'm going to permit him to bring that—that matter in.

ENFR Chaney testified that he first dealt with appellant on or about August 11–12, 1990, when appellant asked him to obtain some LSD. Chaney obtained 20 dosage units and gave 10 to appellant. This apparently was the transaction referred to by appellant during the plea inquiry as preceding the formation of the conspiracy. Chaney testified that on or about August 25 he obtained 50 units and gave appellant 20–30. On or about September 3 he obtained 100 units and gave appellant 30–40. On or about September 22 he obtained 150 units and gave appellant 50. On or about October 1 he obtained 250 units and gave appellant 40. Finally, on or about October 8 he obtained 100 units and gave appellant 30.

Over defense objection, ENFR Carter testified that he met appellant on or about October 1. Appellant asked him if he wanted to make some money and then referred him to another sailor named Fairbanks. Fairbanks recruited Carter to transport him and Chaney to Decatur, Illinois, to obtain LSD. Carter testified that on or about October 7 appellant paid him

with 15 units of LSD for use of Carter's automobile to pick up the LSD.

Special Agent (SA) Burkhardt, a Naval Investigative Service (NIS) investigator, testified that on October 15, he intercepted a conversation between appellant and an informant named Grubbs, by equipping Grubbs with a recording device. During the conversation, appellant admitted that he had delivered LSD to Grubbs on October 5 and was waiting to receive an additional 200 units. After the defense objected, the military judge permitted the testimony but asked trial counsel:

> We've got it pretty well delineated what he's been charged with, and he admitted to all that, and we have it before the court. So why do I need whatever else he did? ... [I]f you're telling me it's going to explain the scope, I think I got a pretty good grasp on the scope without going into uncharged misconduct just from what's before the court and what he's told me here in providency.

SA Burkhardt continued his testimony to describe a second intercept on October 18, during which appellant told Grubbs that he had dealt with his source 20–30 times and had 15 customers waiting to buy LSD. SA Burkhardt intercepted a third conversation on October 24 during which appellant identified Chaney as his supplier. The military judge had overruled a defense objection to SA Burkhardt's testimony, stating that he found the testimony relevant "to show the extent of military personnel to be affected by the LSD introduced, part of the conspiracy, and possessed by this accused."

EMFR Boyd testified that he purchased LSD from appellant on three occasions. During the following colloquy, the military judge overruled a defense objection to evidence of the third purchase, which was not alleged in specifications 1 or 2 of Additional Charge I or admitted by appellant in the plea inquiry:

> DC: All right. My objection is to ... the third transaction as uncharged misconduct.

MJ: Well, it's an unknown quantity. We changed that [to] two hits based on his providency, so that's—it's a difference.

DC: O.K. But Mr. Boyd just testified to a third transaction also.

MJ: Well, yeah, I understand what you're saying, but I'm not going to permit the accused here by the expediency of his providency to limit the charge against him in this case here.

DC: I understand that.

MJ: Noted for the record. Overruled.

ENFR Brown then testified that he purchased two units of LSD from appellant, one in October and one in November. The defense again objected on the ground that Brown's testimony described uncharged misconduct, since appellant had pleaded guilty only to giving, not selling, LSD to Brown and had admitted that the transaction was in August, not October or November. Trial counsel argued that the evidence was relevant and admissible to show that appellant sold rather than gave the LSD to Brown. Regarding the variance in dates, the military judge first observed that "the dates aren't all that important at this stage," and then he partially sustained the defense objection, stating, "I'm going to consider there was one hit and it was a sale, as opposed to a giving.... That's all I'm going to consider from this witness, and, to that extent, your exception is sustained."

## III. Discussion

Appellant now argues that Chaney's testimony was inadmissible because it related to uncharged misconduct, in that Chaney's testimony proved more transactions and more LSD introduced onto the naval base than was admitted by appellant during the plea inquiry. The Government argues that Chaney's testimony was admissible to show the true scope of the conspiracy and its impact on the military community. Our first inquiry is whether the evidence showed uncharged misconduct or merely misconduct included in the charged misconduct.

It became apparent during the sentencing hearing in this case that there had been

a serious misunderstanding between appellant and the military judge regarding the scope of appellant's pleas of guilty to conspiracy. The military judge construed the aggravation evidence as included within the scope of the conspiracy to which appellant had pleaded guilty. He did not rely on RCM 1001(b)(4), Manual for Courts-Martial, United States, 1984, because he thought the evidence described the offenses themselves, not "circumstances directly relating to or resulting from the offenses."

Appellant maintained that he had pleaded guilty only to a limited conspiracy with Chaney which contemplated only one introduction of ten dosage units of LSD onto the naval base. The military judge established a factual predicate for only one introduction of ten units and did not inquire whether any further overt acts occurred in furtherance of the conspiracy. Nevertheless, the military judge construed his plea of guilty to the specification as admitting a much broader conspiracy encompassing 6 overt acts between August 18 and October 8 and involving a total of 180–200 units.

■ It is axiomatic that an accused cannot inadvertently plead guilty. A plea of guilty must be knowing, intelligent, and conscious before the military judge may accept it. RCM 910(c) and (e); *United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969). In this case there was never a meeting of the minds between appellant and the military judge regarding the scope of the conspiracy with Chaney and the number of overt acts committed in furtherance of that conspiracy. Appellant clearly did not intend to plead guilty to a conspiracy of the scope which the military judge and prosecution envisioned. The military judge did not establish a factual predicate for such a broad conspiracy. We hold that appellant's plea of guilty to the specification was provident only insofar as he admitted a conspiracy with Chaney to introduce 10 dosage units of LSD onto the naval base on 1 occasion. *Cf. United States v. Calderone,* 982 F.2d 42 (2d Cir.1992) (smaller conspiracy may be encompassed

by broader conspiracy for double jeopardy purposes).

Since appellant did not admit that the conspiracy included 6 distinct overt acts involving 180–200 dosage units of LSD, his plea of guilty to a specification alleging such an extensive conspiracy was not provident. Accordingly, the finding of guilty to the specification based on the plea of guilty is legally sustainable only insofar as it finds appellant guilty of a limited conspiracy consisting of the one overt act admitted by appellant during the plea inquiry. Contrary to what the military judge believed, the remaining five transactions with Chaney were outside the scope of the conspiracy to which appellant providently pleaded guilty and therefore outside the finding of guilty to the specification which is legally supportable on the basis of the provident plea of guilty.

■ Since there is no valid finding of guilty encompassing the five additional transactions described by Chaney, the next question is whether evidence of those five transactions was admissible under RCM 1001(b)(4) as "circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." We hold that it was. Chaney's testimony established that introduction of 10 dosage units of LSD onto the naval base was not an isolated transaction but was part of an extensive and continuing scheme to introduce and sell LSD to numerous buyers assigned to the naval base. As such, Chaney's testimony was proper aggravation, because it showed "the continuous nature of the charged conduct and its full impact on the military community." *See United States v. Ross,* 34 MJ 183, 187 (CMA 1992) (permissible to show that appellant altered 20–30 enlistment aptitude tests, even though he pleaded guilty only to altering 4); *United States v. Mullens,* 29 MJ 398, 400 (CMA 1990) (uncharged misconduct consisted of "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs"); *United States v. Silva,* 21 MJ 336, 337 (CMA 1986) (uncharged misconduct was

"integral part of his criminal course of conduct"). *See also United States v. Vickers,* 13 MJ 403, 406 (CMA 1982) ("evidence ... directly related to" offense may be admitted "so that the circumstances surrounding that offense or its repercussions may be understood by the sentencing authority").

Likewise, the testimony of SA Burkhardt, ENFR Carter, and EMFR Boyd was admissible to corroborate Chaney's description of the extensive drug-dealing enterprise and to show its impact on the military community. We conclude, therefore, that the military judge did not err by admitting the evidence.

Although the military judge was mistaken regarding the scope of the conspiracy admitted by appellant, we are satisfied that appellant was not prejudiced. The military judge's mistake did not affect the maximum punishment, and the aggravation evidence was admissible under RCM 1001(b)(4).

## IV. Decision

The decision of the United States Navy–Marine Corps Court of Military Review as to the specification of Charge I is affirmed to the extent that it affirms the following finding: Guilty, except the words: "and David Eckart, civilian"; adding the words, "10 dosage units" after the word "distributed" and before the word, "Lysergic," and adding the words, "in September 1990" at the end of the specification; of the excepted words, Not Guilty; of the added words, Guilty.

In all other respects the decision of the court below is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD and WISS concur.