*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and STEWART
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Calvin HALFACRE**
Logistics Specialist Chief (E-7), U.S. Navy
Appellant

**No. 201900210**

Decided: 30 November 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Arthur L. Gaston

Sentence adjudged 14 March 2019 by a general court-martial convened at Naval Support Activity Naples, Italy, consisting of a military judge sitting alone. Sentence approved by the convening authority: confinement for 30 months and a bad-conduct discharge.

For Appellant:
*Philip D. Cave, Esq. (argued)*
*Lieutenant Commander Christopher Riedel, JAGC, USN (on brief)*

For Appellee:
*Lieutenant Jennifer Joseph, JAGC, USN (argued)*
*Lieutenant Joshua C. Fiveson, JAGC, USN (on brief)*

_____

Senior Judge STEPHENS delivered the opinion of the Court, in which Chief Judge MONAHAN and Judge STEWART joined.

————————————————

**PUBLISHED OPINION OF THE COURT**

————————————————

STEPHENS, Senior Judge:

Pursuant to his pleas, Appellant was convicted of three specifications of patronizing a prostitute in violation of Article 134, Uniform Code of Military Justice [UCMJ].[1] Appellant now raises three assignments of error [AOE]: (1) the military judge abused his discretion in admitting and considering evidence of Appellant's alleged sexual assaults against the prostitutes; (2) the military judge abused his discretion by permitting one of the prostitutes to offer an unsworn statement as a "victim";[2] and (3) the confinement for 30 months was inappropriately severe. After careful review, we affirm his convictions and sentence.

## I. BACKGROUND

While Appellant was stationed in Bahrain, he patronized prostitutes three different times. Appellant frequented local bars known to traffic in prostitution. Each time, he negotiated with a prostitute and brought her back to his apartment for sex. But according to the prostitutes, there was more than just sex. They each alleged that Appellant anally raped them. The women, all from Thailand, sought out another woman to assist them as a translator, and then reported these assaults to the Naval Criminal Investigative Service [NCIS]. Based on these allegations, the Government charged Appellant with the three specifications of patronizing a prostitute, to which he ultimately pleaded guilty, but also with three specifications of sexual assault.

---

[1] 10 U.S.C. § 934.

[2] The military judge admitted portions of the victim impact statement only as evidence in aggravation under Rule for Courts-Martial [R.C.M.] 1001(b)(4). Therefore, we do not write separately from the first AOE about this AOE. *See United States v. Matias,* 25 M.J. 356, 363 (C.M.A. 1987), cert. denied, 485 U.S. 968 (1988).

After an Article 32, UCMJ preliminary hearing, Appellant entered into a pretrial agreement. He agreed to plead guilty before a military judge sitting alone to the three specifications of patronizing a prostitute. In exchange, the convening authority agreed to withdraw the sexual assault charges and to disapprove a dishonorable discharge if it was awarded and instead approve a bad-conduct discharge.[3] He also agreed to a maximum confinement of 30 months.

Prior to his guilty plea, the Government moved to admit evidence of the sexual assault allegations. Specifically, the Government moved to admit two video-recorded interviews of the details of the prostitutes' sexual assault allegations and a victim impact statement from one of them. The Government argued that the video interviews were admissible under Rule for Courts-Martial [R.C.M.] 1001(b)(4) as evidence in aggravation of the offense for which Appellant was convicted, and that the victim impact statement was admissible under R.C.M. 1001A as evidence of the harm to one of the prostitutes. Appellant countered by arguing the women were not "victims" of prostitution and that aggravation evidence stemming from uncharged misconduct is limited to "same or similar" crimes. Appellant also argued the probative value of the evidence was substantially outweighed by its unfairly prejudicial impact.[4]

In the video interviews, the prostitutes—through the translator—described how Appellant met them in a local bar, paid them, and then took them to his off-base apartment where they engaged in sexual intercourse. All three stated that during intercourse, Appellant also forced his penis or a sex toy into their anuses. Each of the women claimed to have objected and each claimed they were forced. They detailed how Appellant prevented their escape, pinned them down, and strangled or smothered them to muffle their cries. According to at least one of the women, Appellant engaged in vaginal intercourse after sexually assaulting her.

One of the women also described how Appellant, after the sexual assault, locked her outside of his apartment, thereby requiring her to find her own way home, only to find Appellant had stolen the money he had paid her. The

---

[3] R. at 235.

[4] Appellant also argued that (1) the prostitutes were engaged in illegal activity in Bahrain and therefore, had motives to fabricate, and (2) the woman who translated for them, as seen in the NCIS video, had a motive to fabricate due to her involvement as a co-conspirator in a separate court-martial alleging human trafficking. The translator was also an NCIS cooperating informant.

translator explained to NCIS that a local cab driver had told her several other prostitutes had been sexually assaulted by Appellant in this manner.

After hearing argument from counsel, the military judge ruled the videos and the victim impact statement were admissible for purposes of "accuracy in the sentencing process by permitting the Judge to fully understand the true plight of the victim in each case."[5] He also noted on the record that he was only considering these "for the purposes of evidence in aggravation to be considered in sentencing the accused *for the offense that he's pled guilty for.*"[6] He based his decision on R.C.M. 1001(b)(4) and not on the Government's alternative basis, R.C.M. 1001A.[7] He specifically did not consider any accusations that the translator heard from the taxi driver about other prostitutes.[8]

The military judge then went on to filter the evidence through Military Rule of Evidence [Mil. R. Evid.] 403, finding the evidence probative enough to outweigh the danger of unfair prejudice. Finally, the military judge articulated that he would only consider the video interviews for "the offenses for each one of these individuals at issue" and recognized that he could "only sentence the accused for what he's pled and been found guilty of, not for any offense that the government has now withdrawn from consideration."[9]

After the military judge articulated his ruling, the trial counsel argued for the maximum punishment[10] as the appropriate sentence, not just because Appellant had been found guilty of prostitution but because Appellant used prostitution as a "vessel by which he was able to commit other crimes."[11] The trial counsel highlighted the allegations of sexual assault from the prostitutes. The trial defense counsel argued for a sentence of reduction to E-6 and confinement for 89 days. The military judge announced a sentence of confinement for 30 months and a dishonorable discharge.

---

[5] R. at 280.

[6] *Id.* (emphasis added).

[7] *Id.* at 281.

[8] *Id.* at 286.

[9] *Id.* at 282.

[10] Reduction to E-1, confinement for 36 months, and a dishonorable discharge.

[11] R. at 318.

Appellant argues the military judge abused his discretion in admitting the videos and the written statement because they were not "directly related to or resulting from" the offense of patronizing a prostitute.

## II. DISCUSSION

### A. The Evidence in Aggravation was Admissible

*1. Standard of review and the law*

We review the decision of a military judge to admit aggravation evidence at sentencing for an abuse of discretion.[12] "Where the military judge conducts a proper [Mil. R. Evid.] 403 balancing on the record, we will not overturn his ruling unless we find a clear abuse of discretion."[13]

The Government is entitled to offer evidence in aggravation at sentencing under R.C.M. 1001(b)(4) to show "any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."[14] Aggravation includes evidence of the impact "to any person or entity who was the victim of an offense committed by the accused . . . ."[15] This information assists the sentencing authority to place the offense "in context, including the facts and circumstances surrounding the offense."[16] The link between R.C.M. 1001(b)(4) evidence of uncharged misconduct and the crime "must be direct as the rule states, and closely related in time, type, [and] often outcome, to the convicted crime."[17] Evidence in aggravation must not be so attenuated from the offense for which an accused was convicted as to be unfairly prejudicial, irrelevant, or merely inflammatory.

---

[12] *United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009).

[13] *Id.* (citing and quoting *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009)).

[14] R.C.M. 1001(b)(4) (emphasis added).

[15] *Id.*

[16] *United States v. McCrary*, 2013 CCA LEXIS 387 (A.F. Ct. Crim. App. May 7, 2013) (unpublished op.) (citing *United States v. Mullens*, 29 M.J. 398, 400-01 (C.M.A. 1990); *United States v. Vickers*, 13 M.J. 403, 406 (C.M.A. 1982); *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001); *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006)).

[17] *United States v. Hardison*, 64 M.J. 279, 282 (C.A.A.F. 2007).

Evidence offered in aggravation often highlights "same course of conduct" misconduct of an accused. It has included circumstances in which an accused was convicted of sexually abusing his children at one duty station, but stipulated to almost identical, though uncharged, misconduct at another duty station.[18] It has also included circumstances where a military recruiter was convicted of four specifications of helping potential recruits cheat on military entrance examinations, but had evidence admitted during sentencing indicating he did this "twenty or thirty" times;[19] evidence that an accused distributed a far greater amount of drugs than the amount to which he stipulated;[20] and evidence of additional thefts by an accused of property from a local sheriff's office beyond that for which the accused was convicted.[21] Evidence showing continued drug use after the drug offenses for which an accused was convicted has also been held to be proper evidence in aggravation.[22]

Evidence in aggravation can also show uncharged misconduct which is qualitatively different from the offense for which an accused was convicted. This most often comes in the form of a victim providing a more complete picture of circumstances surrounding the misconduct to which the accused was convicted. For example, when an accused pleaded guilty to unlawful entry of a home and committed an assault consummated by a battery against a woman, the woman testified at sentencing about how he sexually assaulted her after entering the home, including his later admission to her that he "raped" her.[23]

For the purposes of R.C.M. 1001(b)(4), "the meaning of 'directly related' . . . is a function of both what evidence can be considered and how strong a connection that evidence must have to the offense of which the accused has been convicted."[24]

---

[18] *Mullens*, 29 M.J. at 398-401.

[19] *United States v. Ross*, 34 M.J. 183, 184 (C.M.A. 1992).

[20] *United States v. Shupe*, 36 M.J. 431, 432-36 (C.M.A. 1993).

[21] *United States v. Nourse*, 55 M.J. 229, 230-32 (C.A.A.F. 2001).

[22] *United States v. Moore*, 68 M.J. 491 (C.A.A.F. 2010).

[23] *United States v. Terlep*, 57 M.J. 344, 347 (C.A.A.F. 2002).

[24] *Hardison*, 64 M.J. at 281.

*2. Analysis*

Appellant argues that patronizing a prostitute has a qualitative difference from sexual assault. He posits it is unfair for Appellant to be convicted of patronizing prostitutes, but essentially be sentenced for sexually assaulting them. While we agree with that premise, that is not what happened in this case. Appellant was convicted of three specifications of patronizing a prostitute, which carried a maximum confinement of 36 months. Three specifications of sexual assault under these circumstances would carry a maximum confinement of 90 years. Appellant patronized three prostitutes, but, given their statements, they were not run-of-the mill transactions, but rather extremely aggravated events that left each of the three women with significant physical and emotional harm. The aggravation evidence provides context for the offenses for which Appellant was convicted. This gave the military judge a more complete picture of the facts and circumstances of Appellant's misconduct.

We reject Appellant's argument that aggravation evidence of uncharged misconduct may not be admitted if it is not of the same "type" as the convicted offenses. Evidence of a sexual assault may be used as aggravation evidence to show the extent of an assault consummated by a battery. In *United States v. Terlep*, the appellant was charged with burglary and rape when he broke into a home and raped a woman.[25] He eventually pleaded guilty to only unlawful entry and assault consummated by a battery. The woman, as a victim of an assault—though under Article 128 and not Article 120—was permitted to testify about being raped. This allowed the military judge to "fully appreciate the true plight of the victim in each case."[26]

But then Appellant also argues that the prostitutes were not "victims" and therefore, the Government may not use evidence in aggravation that flows from them, the way that the prosecution used evidence in aggravation from the bona fide victim in *Terlep*. We disagree. Assuming without deciding the prostitutes are not "victims" but rather co-participants in a "victim-less crime," the evidence of Appellant's alleged sexual assaults during the course of his adjudicated misconduct are nevertheless "circumstances surrounding the offense" of patronizing a prostitute.

---

[25] 57 M.J. 344.

[26] *Id*. at 350.

In *United States v. Glazier*, the appellant and a fellow Soldier took a joyride in an Army truck while they drank alcohol.[27] As a result, the appellant crashed the vehicle and caused such severe injuries to his passenger that he died. The government charged Glazier with involuntary manslaughter, negligent damage to a government vehicle, willfully disobeying an order of a commissioned officer, wrongful appropriation of a government vehicle, and wrongful use of marijuana. The charges of involuntary manslaughter and wrongful appropriation of a military vehicle were dismissed due to insufficient evidence. The appellant eventually pleaded guilty to the remaining charges and entered into a stipulation of fact. Part of that stipulation stated that the passenger "suffered injuries which resulted in his death later that night."[28] The appellant objected at trial, not to the truth of the stipulated fact, but to its admissibility as proper evidence in aggravation. The military judge admitted it and the Court of Military Appeals held that it was admissible under R.C.M. 1001(b)(4) because it was "directly related to the charged offenses and thus admissible."[29]

In *Glazier*, the passenger was a victim of the appellant's actions, but was not a victim of the offense for which the appellant was convicted. If the passenger had merely sustained serious injuries and had lived to testify, he could surely have testified about the incident to provide the sentencing authority a more complete picture of what happened, even if he were not a bona fide victim. The type of misconduct for which Glazier was convicted—disobeying an officer, negligently damaging an Army truck, and smoking marijuana—were relatively minor, especially compared to involuntary manslaughter. And the passenger was certainly not a victim of any of the convicted offenses. But the misconduct was much more aggravated than just a typical joyride and it was proper for the sentencing authority to have the whole picture, including the facts and circumstances that were part-and-parcel of the convicted offenses, in particular the negligent damage to the government vehicle in which the passenger was riding.

The same holds true for Appellant. He was only convicted of patronizing prostitutes. The prostitutes were arguably not his victims vis-à-vis the crime of prostitution, and the allegations of sexual assault were as qualitatively different from patronizing prostitutes as involuntary manslaughter was to

---

[27] 26 M.J. 268 (C.M.A. 1988).

[28] *Id*. at 269.

[29] *Id*. at 271 (citing *Vickers*, 13 M.J. at 406).

negligent damage of a government vehicle. But the aggravation evidence was proper in both cases because it was inextricably interwoven with the facts and circumstances of the convicted offenses and painted a complete picture for the sentencing authority.

### 3. The military judge conducted a proper balancing test

The military judge conducted a thorough balancing test under Mil. R. Evid. 403. Evidence in aggravation may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice."[30] A military judge enjoys "wide discretion" in applying this rule. As long as the military judge conducts a proper balancing test and places that analysis on the record, the ruling will not be overturned unless there is a clear abuse of discretion.[31]

The military judge found that the probative value was not outweighed by the danger of unfair prejudice to Appellant. In doing so, he also reiterated that he would only consider each of the prostitute's statements as it pertained to her, that the evidence would only be considered as evidence in aggravation, and that Appellant would only be sentenced for the offenses for which he was convicted.

We recognize the inherent danger of evidence in aggravation that appears to be qualitatively different from the offenses for which an accused was convicted. An accused is "not responsible for a never-ending chain of causes and effects."[32] The government should be cautious in attempting to use such evidence in aggravation. Any evidence that is so unfairly prejudicial that the unfairness substantially outweighs the probative value may not be admitted.[33] This was not the case here as the statements of the prostitutes were not some unfair piling-on of bad character evidence by the Government. The statements also did not describe some attenuated event that was "so unrelated to the offense charged as to be irrelevant."[34]

---

[30] Mil. R. Evid. 403.

[31] *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citing *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998).

[32] *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995) (citing *United States v. Witt*, 21 M.J. 637, 640 n. 3 (A.C.M.R. 1985).

[33] Mil. R. Evid. 403.

[34] *United States v. Bono*, 26 M.J. 240, 242 (C.M.A. 1988) (finding ineffective assistance of counsel to not object to admission of an appellant's confession to totally unrelated misconduct from that for which he pleaded guilty).

**B. Appellant's Sentence was Appropriate**

Appellant also argues his sentence to 30 months' confinement for patronizing prostitutes is inappropriately harsh. We review the appropriateness of a sentence de novo.[35] This Court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."[36] "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[37] The analysis requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'"[38] In determining sentence appropriateness, we may not engage in exercises of clemency.[39]

Appellant negotiated with the convening authority to disapprove confinement in excess of 30 months. They did not negotiate any protection from a punitive discharge. The military judge properly ensured the pretrial agreement was entered into voluntarily and by the Appellant's own free will[40] and also asked whether the Defense wished to withdraw from the agreement.[41] Appellant received the benefit of his bargain, but now contends the length of the sentence combined with the dishonorable discharge to evoke "immediate surprise"[42] and to be "excessive [in] nature,"[43] arguing the sentence was in fact for the previously dismissed sexual assault charge and specifications.

We disagree and find the adjudged sentence appropriate. Weighing the gravity and circumstances of this misconduct, particularly when considering the properly admitted evidence in aggravation against his record of service

---

[35] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[36] UCMJ art. 66(c).

[37] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[38] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-181 (C.M.A. 1959)).

[39] *Healy*, 26 M.J. at 395-396.

[40] R. at 235-38.

[41] *Id*. at 278, 282-83.

[42] App. Brief dated 2 March 2020 at 4.

[43] App. Supp. Brief dated 13 August 2020 at 9.

and the other evidence in extenuation and mitigation, we are convinced that justice was done and Appellant received the punishment he deserves.[44]

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and find no error materially prejudicial to Appellant's substantial rights occurred.[45] Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Chief Judge MONAHAN and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[44] *See Healy,* 26 M.J. at 395.

[45] UCMJ arts. 59, 66.