# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40310**

———————————

**UNITED STATES**
*Appellee*

**v.**

**DeQuayjan D. JACKSON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 January 2024

———————————

*Military Judge*: Shad R. Kidd.

*Sentence*: Sentence adjudged 15 March 2022 by GCM convened at Tinker Air Force Base, Oklahoma. Sentence entered by military judge on 18 April 2022: Bad-conduct discharge, confinement for 350 days, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant*: Major Spencer R. Nelson, USAF.

*For Appellee*: Colonel Naomi P. Dennis, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and MERRIAM, *Appellate Military Judges*.

Judge MERRIAM delivered the opinion of the court, in which Senior Judge RICHARDSON and Senior Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MERRIAM, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with her pleas and pursuant to a plea agreement,[1] of one specification of failing to obey a lawful general regulation, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892,[2] and one specification of wrongful distribution of marijuana, one specification of wrongful distribution of cocaine, one specification of wrongful distribution of alprazolam (a Schedule IV controlled substance), one specification of wrongfully aiding others' manufacture of cocaine, and one specification of wrongfully aiding others' distribution of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged sentence was a bad-conduct discharge, confinement for 350 days,[3] forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.

Appellant raises three issues on appeal: (1) whether the military judge erred when he admitted uncharged misconduct under the "continuous course of conduct doctrine" during the pre-sentencing hearing; (2) whether the firearms prohibition in 18 U.S.C. § 922 referenced in the staff judge advocate's indorsement to the Statement of Trial Results is constitutional when Appellant was convicted of non-violent offenses; and (3) whether Appellant's sentence is inappropriately severe.[4]

Finding no error materially prejudicial to Appellant's substantial rights, we affirm the findings and sentence.

---

[1] Among other provisions in her plea agreement, Appellant agreed that a bad-conduct discharge "must" be adjudged, that a minimum total of 205 days and maximum total of 490 days of confinement for all specifications of which she was convicted "must" be adjudged, and that a reprimand, rank reduction, and forfeiture of all pay allowances "may" be adjudged. Additionally, the plea agreement stated that a dishonorable discharge "may not" be adjudged and further required that five additional specifications to which Appellant pleaded not guilty be dismissed with prejudice after announcement of sentence.

[2] All references in this opinion to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant received 10 days for violation of the Article 92, UCMJ, specification, and 45 days, 75 days, 50 days, 90 days, and 80 days, respectively, for violation of the five Article 112a, UCMJ, specifications, with each period of confinement to run consecutively.

[4] Appellant raises this third issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Over a few months in the summer and fall of 2021, Appellant distributed cocaine, alprazolam (commonly known by the brand name Xanax), and marijuana. Most, if not all, of this illegal distribution of controlled substances was on behalf of, or in association with, members of the criminal gang known as the Crips.

Appellant's distribution of marijuana was to another active duty Airman, Airman First Class (A1C) JJ. This "hand to hand" transaction occurred in the public parking lot of an off-base hospital while A1C JJ was in uniform standing outside Appellant's car. On another occasion Appellant sold 40 tablets of alprazolam to A1C JJ.

On approximately 25 occasions, Appellant drove gang members in her car to various locations for the purpose of selling cocaine. Appellant also aided gang members' manufacture of their cocaine product by permitting gang members to "cook" the cocaine in her off-base residence, using her microwave, kitchen utensils, and water.

Though Appellant was not a member of the Crips, she associated with several members on a regular basis, allowed them to use her home, frequently "threw" (displayed with her hands) gang signs associated with the Crips as a "sign of respect" to the gang members, assisted their criminal drug-selling enterprise on dozens of occasions, and on at least one occasion suggested to gang members that they make the aforementioned sale of alprazolam to A1C JJ.

## II. DISCUSSION

### A. Continuous Course of Conduct

#### 1. Additional Background

During the pre-sentencing hearing following acceptance of Appellant's guilty pleas, trial counsel moved to admit Prosecution Exhibit 4, a disc containing two video clips from law enforcement's interview of Appellant as matters in aggravation.

One of the video clips (Clip One) was two minutes and thirty-one seconds in length. The military judge admitted Clip One over trial defense counsel's objection, but Appellant does not now assert this was error and Clip One is not addressed further here. The second video clip (Clip Two) was four minutes and forty-six seconds long. In Clip Two, Appellant described to law enforcement agents how she was the "middle man" for a sale of alprazolam "bars" to Mr. D at the intersection of "15th Street and High Avenue." Appellant told law enforcement that Mr. D had asked her for "pain pills," that she did not have any, and that she then approached a gang member to provide some that she could

sell to Mr. D. Appellant continued to tell law enforcement that Mr. D called a gang member, who then provided two alprazolam tablets to Appellant, which she then sold to Mr. D for $20.00 and gave the money to the gang member. She told law enforcement she made the transaction in August or late July of 2021.

Trial defense counsel objected to Clip Two on Mil. R. Evid. 403 grounds, and further argued that the uncharged sale of alprazolam to which Appellant confessed in Clip Two was not proper evidence in aggravation because the misconduct discussed was not directly resulting from or directly related to the offenses of which Appellant had been convicted, but was rather improper propensity evidence. Trial counsel agreed Clip Two was uncharged misconduct, but argued it was a "continuous course of conduct from [Appellant]" with regard to selling alprazolam. Trial counsel argued that it was close in time to the wrongful distribution of approximately 40 tablets of alprazolam of which Appellant had just been convicted and was part of a continuous course of conduct in selling illegal drugs. Trial counsel stated the evidence was not offered under Mil. R. Evid. 404(b), but strictly as aggravating evidence under Rule for Courts-Martial (R.C.M.) 1001(b)(4).

The military judge determined Clip Two was admissible aggravation evidence under R.C.M. 1001(b)(4). The military judge noted Appellant had pleaded guilty to distribution of cocaine to Mr. D and of distribution of alprazolam to A1C JJ and that the uncharged misconduct referenced in Clip Two was "in the charged time frame." The military judge found that this case was similar to "a number of cases" where an accused pleaded guilty to some instances of misconduct and additional instances of the same or similar type of misconduct were held to be admissible under R.C.M. 1001(b)(4) because the aggravation evidence was part of a continuous course of conduct. The military judge determined that Clip Two provided "context to understand the overall course of conduct," and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Regarding this Mil. R. Evid. 403 analysis, the military judge found that the danger of unfair prejudice was significantly mitigated by the fact that it was a judge-alone case, that he was aware Appellant could "only be sentenced for the crimes for which she has been accused," and that he would not consider the evidence for propensity purposes.

**2. Law**

This court reviews a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion. *United States v. Carter*, 74 M.J. 204, 206 (C.A.A.F. 2015) (citation omitted); *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citations omitted). A military judge abuses their discretion when their legal findings are erroneous or when they make a clearly erroneous finding of fact. *Id.* (citations omitted). To be

overturned on appeal, the military judge's ruling must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Taylor*, 53 M.J. 195, 199 (C.A.A.F. 2000) (internal quotation marks omitted) (citing *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). For a ruling to be an abuse of discretion, it must be more than a mere difference of opinion. *United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F. 2013) (citing *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009)).

"[A]dmission of aggravation evidence necessarily involves a contextual judgment." *United States v. Moore*, 68 M.J. 491 (C.A.A.F. 2010) (mem.) (citations omitted); *see also United States v. McCrary*, 2013 CCA LEXIS 387, *12 (A.F. Ct. Crim. App. 7 May 2013) (unpub. op.) (uncharged misconduct can be admitted as aggravation evidence, which may be used to "inform the sentencing authority's judgment regarding the charged offense and put[ ] that offense in context").

Article 56(c)(1), UCMJ, 10 U.S.C. § 856(c)(1), states:

> In sentencing an accused under [Article 53, UCMJ, 10 U.S.C. § 853], a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration—(A) the nature and circumstances of the offense and the history and characteristics of the accused; (B) the impact of the offense on—(i) the financial, social, psychological, or medical well-being of any victim of the offense; and (ii) the mission, discipline, or efficiency of the command of the accused and any victim of the offense; [and] (C) the need for the sentence—(i) to reflect the seriousness of the offense; (ii) to promote respect for the law; (iii) to provide just punishment for the offense; (iv) to promote adequate deterrence of misconduct; (v) to protect others from further crimes by the accused; (vi) to rehabilitate the accused; and (vii) to provide, in appropriate cases, the opportunity for retraining and return to duty to meet the needs of the service[.]

R.C.M. 1001(b)(4) states:

> Trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and evidence of significant adverse impact on the mission,

discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

"The meaning of 'directly related' under R.C.M. 1001(b)(4) is a function of both what evidence can be considered and how strong a connection that evidence must have to the offenses of which the accused has been convicted." *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). Uncharged misconduct may be directly related to the charged misconduct when part of a "continuous course of conduct." *See, e.g., United States v. Shupe*, 36 M.J. 431, 436 (C.M.A. 1993) (holding testimony about uncharged misconduct was proper aggravation under R.C.M. 1001(b)(4), because it showed "'the continuous nature of the charged conduct'" (quoting *United States v. Ross*, 34 M.J. 183, 187 (C.M.A. 1992))); *Ross*, 34 M.J. at 187 (stating "the continuous nature of the charged conduct and its full impact on the military community are proper aggravating circumstances"); *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990) (holding admissible uncharged misconduct that consisted of "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs"); *United States v. Silva*, 21 M.J. 336, 337 (C.M.A. 1986) (uncharged misconduct was admissible when it was an "integral part of [the accused's] criminal course of conduct").

Aggravation evidence admitted under R.C.M. 1001(b)(4) must also satisfy Mil. R. Evid. 403. *Hardison*, 64 M.J. at 281. Under that rule, a military judge may exclude evidence if its probative value is substantially outweighed by such considerations as its tendency to result in unfair prejudice, confuse the issues, or mislead the members. A military judge has "wide discretion" in applying Mil. R. Evid. 403, and we exercise "great restraint" in reviewing such applications when the military judge articulates his or her reasoning on the record. *United States v. Humpherys*, 57 M.J. 83, 91 (C.A.A.F. 2002) (citation omitted). On the other hand, appellate courts "give[ ] military judges less deference if they fail to articulate their [Mil. R. Evid. 403] balancing analysis on the record, and no deference if they fail to conduct the [Mil. R. Evid.] 403 balancing." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation omitted).

A military judge is assumed "to be able to appropriately consider only relevant material in assessing sentencing." *Hardison*, 64 M.J. at 284 (citation omitted).

### 3. Analysis

Appellant contends the military judge improperly admitted aggravation evidence through what Appellant calls the "continuous course of conduct doctrine," under which uncharged misconduct may be admitted during presentencing as evidence in aggravation when the charged and uncharged misconduct are part of a continuing course of conduct. Appellant's argument in

support of this assignment of error asserts several theories in the alternative: (1) the United States Court of Appeals for the Armed Forces (CAAF) implicitly overruled the continuous course of conduct doctrine *sub silentio* in *United States v. Hardison*; (2) the continuous course of conduct doctrine conflicts with Article 56(c), UCMJ, 10 U.S.C. § 856(c), and/or R.C.M. 1001(b)(4); and (3) under the circumstances of this case, the military judge improperly applied the doctrine when he admitted uncharged misconduct under R.C.M. 1001(b)(4) during the pre-sentencing hearing.

We reject Appellant's characterization of the CAAF's decision in *Hardison*, 64 M.J. at 281–83, as constituting a *sub silentio* overturning of its prior decisions that a continuous course of conduct can demonstrate uncharged misconduct is "directly related" to the charged offenses under R.C.M. 1001(b)(4). In *Hardison*, the CAAF did not implicitly overturn its prior precedent; it explicitly embraced it.[5] In determining that pre-service drug use was not "directly related" to the charged misconduct, the CAAF cited positively two prior cases— *Shupe*, 36 M.J. 431, and *Mullens*, 29 M.J. 398—in which the CAAF and its predecessor, the Court of Military Appeals (CMA), found that a continuous course of conduct meant the uncharged misconduct was directly related to the charged offenses and thus admissible under R.C.M. 1001(b)(4). *Hardison*, 64 M.J. at 282. In *Shupe*, the appellant had confessed during the plea providence inquiry to one wrongful distribution of ten doses of LSD. 36 M.J. at 436. The CMA upheld admission of aggravation evidence that the appellant had engaged in five additional transactions totaling 180–200 doses of LSD to "numerous buyers" over several months because the five uncharged instances of drug distribution were "not isolated" from the single distribution to which the appellant had pleaded guilty, but rather were part of a single "extensive and continuing scheme to introduce and sell [drugs]." 36 M.J. at 436. And in *Hardison*, the CAAF explicitly observed that "[t]he 'continuous nature of the charged conduct' was *important to our conclusion*" in *Shupe*. 64 M.J. at 282 (emphasis added) (quoting *Shupe*, 36 M.J. at 436). Appellant further contends the CAAF did not apply the continuous course of conduct doctrine in *Hardison*. In fact, the CAAF did evaluate whether there was a continuous course of conduct similar to *Shupe* and *Mullens* and simply concluded "[t]here was no similar connection here." 64 M.J. at 282.

In light of our superior court's explicit approval in *Hardison* and prior cases of the continuous course of conduct doctrine under R.C.M. 1001(b)(4), we decline to find the doctrine conflicts with R.C.M. 1001(b)(4).

---

[5] We also note the CAAF has instructed that "'overruling by implication is disfavored.'" *United States v. Tovarchavez*, 78 M.J. 459, 465 (C.A.A.F. 2019) (quoting *United States v. Pack*, 65 M.J. 381, 383 (C.A.A.F. 2007)) (additional citation omitted).

Appellant also argues that admitting uncharged misconduct under the continuous course of conduct doctrine is an "[a]textual [a]berration" that conflicts with the plain language of Article 56(c), UCMJ. Specifically, Appellant observes that Article 56(c), UCMJ, repeatedly commands an accused be sentenced for "the offense" and that admission of uncharged misconduct violates that command. Appellant acknowledges that "R.C.M. 1001(b)(4) tracks closely with the language of Article 56, [UCMJ]" but contends the language in R.C.M. 1001(b)(4) departs from Article 56, UCMJ, where it allows that aggravation evidence may be "directly relating to or resulting from the offense . . . ." The implication of Appellant's argument is that this language in R.C.M. 1001(b)(4) conflicts with the plain language of Article 56, UCMJ. We disagree. Article 56, UCMJ, does indeed direct that an accused be sentenced for their offenses, but the R.C.M. 1001(b)(4) command that aggravation evidence be directly related to or resulting from the offenses of which the accused is convicted is consistent with the language in Article 56, UCMJ, specifically that the accused be punished based on "the nature and circumstances of the offense and the history and characteristics of the accused" and the "seriousness of the offense."[6] Likewise, admitting uncharged misconduct that is directly related to the offense when the charged and uncharged misconduct are part of a continuing course of conduct is consistent with the Article 56, UCMJ, command that punishment be based on "the nature and circumstances of the offense."

Appellant further contends that even if the continuous course of conduct doctrine is not inconsistent with Article 56, UCMJ, or R.C.M. 1001(b)(4), and has not been overruled by the CAAF, the military judge improperly applied the doctrine to admit uncharged misconduct under the circumstances of this case. Appellant contends it was error to admit the uncharged misconduct because (1) the uncharged misconduct was remote in time to the charged conduct; (2) the uncharged misconduct involved a different person; and (3) the uncharged misconduct exceeded the plain language of the charge. We are unpersuaded.

First, we find the uncharged misconduct detailed in Clip Two was not remote in time to the charged misconduct. It occurred within, or very near, the charged timeframe of "between on or about 1 August 2021 and on or about 5 October 2021." In Clip Two, Appellant asserted she sold the alprazolam to Mr.

---

[6] We also note the inclusion in R.C.M. 1001(b)(4) of this type of aggravation evidence was in effect when Congress recently enacted the current version of Article 56, UCMJ, as part of the Military Justice Act of 2016. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5301, 130 Stat. 2000, 2919–21 (2016). The "new" Article 56 did not circumscribe aggravation evidence as an appropriate sentencing consideration. *See United States v. Tyler*, 81 M.J. 108, 113 (C.A.A.F. 2021) (citations omitted) ("We assume that Congress is aware of existing law when it passes legislation.").

D in "August, late July." That transaction was somewhat removed from the late September alprazolam distribution that Appellant detailed during her guilty-plea inquiry, but no more remote than the instances of uncharged misconduct upheld in *Shupe* (where uncharged misconduct occurred weeks to months apart from the charged misconduct), and nowhere near as remote as the uncharged misconduct rejected in *Hardison* (where uncharged misconduct occurred three years earlier than charged misconduct).

Appellant also contends admission of the uncharged misconduct in this case was inappropriate because it involved a different recipient of the illicit drugs than the charged misconduct. Our superior court has, in some cases, observed that the "victims" of the charged and uncharged misconduct were the same. *See, e.g.*, *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001); *Mullens*, 29 M.J. at 400. But the CAAF has not *required* that aggravation evidence of uncharged misconduct involve precisely the same persons as the charged misconduct to be admissible under R.C.M. 1001(b)(4). In fact, as the CMA expressly noted in *Shupe*, the aggravation evidence of additional misconduct involved sales of lysergic acid diethylamide (LSD) to "numerous buyers." 36 M.J. at 436. In *Ross*, the CMA upheld admission of aggravation evidence showing the appellant altered dozens of enlistment aptitude tests (*i.e.*, different persons' tests) even though he pleaded guilty to altering only four. 34 M.J. at 187. Here, the uncharged misconduct involved sale of two tablets of alprazolam, the same drug Appellant had just pleaded guilty to selling. The uncharged sale was not to the same buyer of the charged alprazolam distribution, but was to Mr. D, to whom Appellant had just admitted selling a different drug, and the sale occurred at the same location where the charged sale of cocaine to Mr. D took place. Under the circumstances of this case, the fact that the buyer of the uncharged distribution of alprazolam was different than the buyer in the charged distribution of alprazolam does not remove the uncharged distribution from the scope of a "directly related" offense.

Finally, Appellant asserts "any uncharged misconduct relating to selling additional [alprazolam] pills was not 'resulting from' or 'directly relating' to 'the offense' because it goes above and beyond the charge itself." Appellant's contention that the uncharged misconduct "exceeded the plain language of the charge" amounts to a redundant assertion that the uncharged misconduct is, in fact, uncharged misconduct. The Government does not argue to the contrary and we find this assertion requires no further analysis.

The military judge's findings of fact are supported by the evidence and his application of the correct legal principles was not clearly unreasonable. Though the military judge did not cite specific cases by name when he ruled in favor of admitting Clip Two under R.C.M. 1001(b)(4), he described our superior court's precedent regarding a "continuous course of conduct" in *Ross*, 34 M.J. at 187,

described *supra*, and *Shupe,* 36 M.J. at 436. In *Shupe*, the CMA noted the aggravation evidence established the conduct to which the appellant pleaded guilty was not isolated but part of "an extensive and continuing scheme" to sell illegal drugs. 36 M.J. at 436. The same can be said of the uncharged misconduct in this case. We conclude the military judge did not abuse his discretion in admitting Clip Two as uncharged misconduct under R.C.M. 1001(b)(4) or in determining the evidence satisfied Mil. R. Evid. 403.

## B. Firearms Prohibition

The staff judge advocate's indorsement to the Statement of Trial Results indicates Appellant's conviction triggered a "[f]irearm [p]rohibition" under 18 U.S.C. § 922. Appellant asks this court to assess whether 18 U.S.C. § 922 is constitutional when the triggering offenses were non-violent. We decline to undertake such an assessment in this case. In reviewing appeals under Article 66(b)(3), UCMJ, 10 U.S.C. § 866(b)(3), this court "may act only with respect to the findings and sentence as entered into the record." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). This court held in *United States v. Lepore*, 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc), the 18 U.S.C. § 922 firearm prohibition was not a finding or part of the sentence; accordingly this court lacks authority under Article 66, UCMJ, to direct modification of that portion of the staff judge advocate's indorsement to the Statement of Trial Results. We do not read *United States v. Lemire,* 82 M.J. 263 n* (C.A.A.F. 2022) (unpub. op.), to provide a basis to consider Appellant's claim, as Appellant suggests, when in that case the CAAF merely directed the court-martial promulgating order "be corrected."

## C. Sentence Severity

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted).

This court "may affirm only . . . the sentence or such part or amount of the sentence, as [it] finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ. Courts "assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although this court has broad discretion in determining whether a particular sentence is appropriate, and Article 66, UCMJ, empowers us to "do justice," we have no authority to "grant mercy" by engaging in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

A plea agreement with the convening authority is "some indication of the fairness and appropriateness of [an appellant's] sentence." *United States v. Perez*, No. ACM S32637 (f rev), 2021 CCA LEXIS 501, at *7 (A.F. Ct. Crim. App. 28 Sep. 2021) (unpub. op.) (footnote omitted); *see also United States v. Fields*, 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015) (an "accused's own sentence proposal is a reasonable indication of its probable fairness to him" (citations omitted)).

### 2. Analysis

Appellant's claim that her sentence is inappropriately severe rests primarily on her assertion of prior traumas in her life and the fact that she deployed to the Middle East. Appellant does not detail which aspect(s) of her sentence are inappropriately severe, but instead suggests that based on this "strong evidence in mitigation and extenuation," this court should "reduce her sentence." Under the specific facts of this case, Appellant's arguments for a reduced sentence are more a request for clemency than an appeal of sentence severity.

In her plea agreement, Appellant agreed that a bad-conduct discharge "must" be adjudged, that a minimum of 205 days and maximum of 490 days of confinement "must" be adjudged, and that a reprimand, rank reduction, and forfeiture of all pay allowances "may" be adjudged. Having enjoyed the benefits of her plea agreement, including a cap on confinement and the withdrawal and dismissal with prejudice of multiple specifications, Appellant now seeks to convince us the punishment she received, which is well within the range of punishment to which she agreed in her plea agreement, is "inappropriately severe." We are not convinced.

Appellant was convicted of committing numerous drug crimes on behalf of, and in active participation with, a criminal gang. Two of these drug distributions were to an active-duty Air Force member, and one occurred in public view while that Airman was in uniform. After carefully considering Appellant, the nature and seriousness of the offenses, the particularized extenuating and mitigating evidence, and all the other matters in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court